**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS FOR THE NINTH CIRCUIT

SOPHIA DAIRE,
*Petitioner-Appellant*,

v.

MARY LATTIMORE, Warden
*Respondent-Appellee*.

No. 12-55667

D.C. No.
CV 10-3743-
DMG(AJW)

OPINION

Appeal from the United States District Court
for the Central District of California
Dolly M. Gee, District Judge, Presiding

Argued and Submitted
July 10, 2014—Pasadena, California

Filed March 19, 2015

Before: Fortunato P. Benavides,* Kim McLane Wardlaw,
and Richard R. Clifton, Circuit Judges.

Opinion by Judge Benavides

---

* The Honorable Fortunato P. Benavides, Senior Circuit Judge for the
U.S. Court of Appeals for the Fifth Circuit, sitting by designation.

## SUMMARY[**]

### Habeas Corpus

The panel affirmed the district court's denial of a 28 U.S.C. § 2254 habeas corpus petition brought by California state prisoner Sophia Daire, who is serving a 40-year "three strikes" sentence for first-degree burglary.

Daire argued that she was deprived of effective assistance because her attorney failed to present evidence of mental illness in her *Romero* motion asking the sentencing court to disregard two of her strikes. The panel held that even assuming, *arguendo*, that the applicability of *Strickland v. Washington* to noncapital sentencing is clearly established such that federal courts can afford relief from a state court's flawed application of *Strickland* in that context, Daire cannot prevail under the review standard imposed by AEDPA. The panel held that the state court's findings – that trial counsel's performance did not fall below an objective standard of reasonableness and that submission of Daire's medical evidence would not have changed the outcome of her *Romero* hearing – were not unreasonable applications of federal law.

---

[**] This summary constitutes no part of the opinion of the court. It has been prepared by court staff for the convenience of the reader.

**COUNSEL**

Sara J. O'Connell (argued), Covington & Burling, LLP, San Diego, California, for Petitioner-Appellant.

James William Bilderback, II (argued), Trial Attorney; Xiomara Costello, Deputy Attorney General; Kamala D. Harris, Attorney General; Dane R. Gillette, Chief Assistant Attorney General; Lance E. Winters, Senior Assistant Attorney General; and Kenneth C. Byrne, Supervising Deputy Attorney General, Office of the Attorney General of California, Los Angeles, California, for Respondent-Appellee.

**OPINION**

BENAVIDES, Circuit Judge:

A California state prisoner petitions this court for writ of habeas corpus pursuant to the Anti-terrorism and Effective Death Penalty Act ("AEDPA"), 28 U.S.C. § 2254 (2012). Currently serving a forty-year "three strikes" sentence for first-degree burglary, California Penal Code § 459, the petitioner argues that she was deprived of effective assistance when her attorney failed to present evidence of mental illness at sentencing. Because the state's adjudication of this claim was not an unreasonable application of clearly established federal law, 28 U.S.C. § 2254 (d), we AFFIRM the district court's denial of the petition.

## I.

Sophia Daire is a 48-year-old woman who has, by all accounts, led a rather difficult life. Her personal history is an unfortunate tapestry of poverty, addiction, mental illness, and incarceration. Interwoven among these dark elements is a disturbing pattern of violence, with Daire having suffered repeated physical and sexual abuse at the hands of friends, family members, and unknown assailants.

On September 8, 2006, Daire was charged with first-degree burglary in violation of § 459 of the California Penal Code. A neighborhood resident had reported various possessions missing from his home, including cash, perfume, clothing, and costume jewelry. Daire was seen wearing the resident's missing NFL jersey a few minutes later, but the more valuable stolen items were not in her possession and were never recovered. Upon her arrest, Daire denied having committed any crime, and insisted that she found the jersey and some of the other stolen property in a nearby garbage bin. She conceded, however, that she has a rather long history of similar residential burglaries.

When Daire's first trial resulted in a hung jury, she was retried and convicted. At sentencing, Daire admitted to three prior burglary convictions for the purposes of California's "three strikes" recidivism sentence enhancements, *id*. § 667(a)(1). Daire also filed a motion asking the court to disregard two of these strikes, as permitted by *Romero*[1] and § 1385 of the California Penal Code. Although defense counsel was aware of Daire's bipolar disorder, neither the

---

[1] *People v. Superior Court (Romero)*, 917 P.2d 628, 13 Cal. 4th 497, 53 Cal. Rptr. 2d 789 (Cal. 1996).

motion nor the subsequent oral argument included any information about Daire's mental health. Ruling from the bench, the court denied the motion, finding a high risk of continued recidivism and concluding that Daire represents the kind of "case[] that [the]Three Strikes [Rule] is for." The judge then sentenced Daire to forty years, the minimum permissible sentence in light of her record. A successful motion could have resulted in a sentence of fewer than ten years. *See* Cal. Penal Code § 461.

After unsuccessfully raising various challenges on direct appeal,[2] Daire filed a habeas petition in state court. Daire argued, *inter alia*, that counsel had been constitutionally ineffective by conducting insufficient research into Daire's medical history and by failing to use Daire's bipolar disorder as a mitigating factor at sentencing. In particular, Daire asserted that additional research would have revealed that her condition "can be managed with proper medication and treatment, probably quite easily." Under the standard established in *Strickland v. Washington*, 466 U.S. 668 (1984), representation is only constitutionally inadequate if counsel's conduct is unreasonable and results in prejudice to the defendant.

The California Superior Court declined to issue the writ, rejecting Daire's argument for two reasons. First, it found counsel's performance objectively reasonable in that counsel had "properly represented Daire throughout [the] matter," and had presented the sentencing judge with myriad mitigating factors at sentencing. *See In re Sophia Daire*, No. VA

---

[2] *People v. Daire*, No. B201976, 2008 WL 4926956 (Cal. Ct. App. Nov. 19, 2008), *review denied*, No. S169253 (Cal. Jan. 28, 2009), *and cert. denied*, 557 U.S. 905 (2009).

096706, 3–4 (Super. Ct. L.A. Cnty. July 15, 2010) [hereinafter "State Decision"]. In addition, the court concluded that the sentence was ultimately unaffected by the omission of any evidence regarding Daire's mental health, as that evidence would not have overcome "her unrelenting record of recidivism." *Id*. at 4–5. The decision was affirmed without comment by the intermediate court of appeals and by the California Supreme Court.[3]

Finding no relief from the state bench, Daire turned to the federal courts, renewing her ineffective assistance argument in a petition submitted to the Central District of California. Under the AEDPA, federal courts may afford habeas relief from state custody only where a state court's adjudication of the same habeas claim was "contrary to, or . . . an unreasonable application of, clearly established Federal law." 28 U.S.C. § 2254(d)(1). A magistrate judge found the AEDPA standard satisfied with respect to the first prong of the *Strickland* test. *See Daire v. Lattimore*, No. CV 10-3743-DMG(AJW), 2011 WL 7663701 (C.D. Cal. Nov. 10, 2011). Specifically, the judge found the state court's analysis of counsel's conduct "conclusory and unreasonable," and that trial counsel "fail[ed] to present the most persuasive evidence to support the *Romero* motion." *Id*. at \*7 (footnote omitted). Nevertheless, the magistrate judge recommended denying the petition after finding that the state court's adjudication of the prejudice prong was "neither contrary to, nor an unreasonable application of, the *Strickland* standard." *Id*. at \*8. As a

---

[3] The Superior Court also found the claim procedurally barred. That argument has not been raised here; however, it appears the procedural bar was overruled when the California Supreme Court reached the merits of Daire's petition. *See Trigueros v. Adams*, 658 F.3d 983, 991 (9th Cir. 2011).

consequence, the magistrate judge concluded, Daire was "not entitled to relief on the basis of this claim." *Id.*

After reviewing the magistrate judge's report, the district court accepted its recommendation only in part. *See* 2012 WL 1197645 (C.D. Cal. April 9, 2012). Although the district court agreed that the state court had unreasonably adjudicated effective assistance, the district court disagreed with the magistrate judge's conclusions regarding prejudice. *Id.* at \*1. Specifically, the district court found that the state courts had "failed to even consider whether the presentation of mental health evidence could have made a difference to the sentencing court." *Id.* at \*2. The district court explained:

> Important to the prejudice assessment, and not even mentioned in the Superior Court's denial of *habeas* relief, is the fact that when declaring a mistrial after the first trial ended with a deadlocked jury, the trial court stated, "[t]he court could attempt to undercut the People's offer, certainly on *Romero*, and **I think there's a strong basis for that.**" This statement suggests that the trial court, which had just heard the evidence presented during the first trial, was inclined to find a basis for granting a *Romero* motion. The *Romero* motion ultimately presented to the trial court, however, failed to include *any* evidence regarding petitioner's severe mental illness, the effect of that mental condition on her culpability, and the medical opinion that her illness was treatable.

> This Court finds that the mental illness evidence omitted by counsel in the *Romero* motion . . . potentially explains her drug use and recidivism, and would have provided the 'strong basis' for the *Romero* motion that the trial court initially anticipated.

*Id*. at \*1–\*2 (emphasis in original).   The district court, however, ultimately denied the petition, reluctantly concluding that binding Circuit precedent precludes relief from any injustice arising out of ineffective assistance during noncapital sentencing.   *Id*. at \*2 (citing *Davis v. Grigas*, 443 F.3d 1155 (9th Cir. 2006), and *Cooper-Smith v. Palmateer*, 397 F.3d 1236 (9th Cir. 2005)).   The district court then granted a certificate of appealability, encouraging Daire to seek relief from this Court.

## II.

We begin by clarifying the scope of our review.   The district court certified the question of whether *Strickland*'s applicability "to the sentencing procedure in a noncapital case was clearly established federal law" for the purposes of Daire's claim.   *Id*. (referring to the standard stated in 28 U.S.C. § 2254(d)(1)).   Under AEDPA, our review is limited to "the denial of a constitutional right."   28 U.S.C. § 2253(c)(2).   A certificate of appealability must therefore "indicate which specific issue" implicates that right.   *Id*. § (c)(3).   The certificate granted here stops short of that standard, essentially certifying a question of pure legal theory.   However, because we agree with the district court that Daire's petition warrants further review, we construe the certificate as referring to the underlying constitutional issue raised by petitioner, *viz*., whether Daire was deprived of

effective assistance when counsel failed to present a mental health defense at sentencing. That issue subsumes the narrower question certified by the district court. To whatever extent the district court did not intend to grant a certificate on the constitutional issue, we exercise our own authority to do so. *Id*. § (c)(1); *see also Jones v. Ryan*, 691 F.3d 1093, 1095 (9th Cir. 2012) (expanding district court's certificate of appealability), *cert. denied*, — U.S. —, 133 S. Ct. 2831 (2013).

## III.

The district court denied Daire's petition after concluding that *Strickland*'s applicability to noncapital sentencing is not clearly established, and thus that federal courts can afford no relief from a state court's flawed application of *Strickland* in that context. But, as explained later, whether or not *Strickland* is applicable to noncapital sentences is not determinative of the resolution of this appeal.

Federal review of habeas petitions from state prisoners is governed by the AEDPA, 28 U.S.C. § 2254. The AEDPA allows federal courts to issue a writ only where the petitioner can show that the state court's adjudication of the petitioner's habeas argument "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *Id*. § 2254(d). Although the California Supreme Court denied the petition without explanation, its decision is nevertheless subject to § 2254 review. *See Cullen v. Pinholster*, 131 S. Ct. 1388, 1402 ("Section 2254(d) applies even where there has been a

summary denial." (citing *Harrington v. Richter*, — U.S. —, 131 S. Ct. 770, 786 (2011))).

In 1984, the Supreme Court established the standard by which defense counsel's performance is generally measured. *See generally Strickland*, 466 U.S. 668. *Strickland* involved a challenge to counsel's handling of the sentencing phase of a capital murder case. *Id*. at 675. The petitioner, having been sentenced to death after confessing to three heinous murders, argued that counsel should have explored several mitigation options and should have presented evidence of mental illness at sentencing. *Id*. at 672, 675–76. The habeas petition was adjudicated by the Florida state courts, by the U.S. District Court for the Southern District of Florida, by the Fifth Circuit, and by the *en banc* Eleventh Circuit after that court split from the Fifth Circuit. *Id*. at 677–80. Each of these courts employed a slightly different approach to determining the effectiveness of counsel's performance. *Id*. at 683–84. In order to ensure a uniform constitutional expectation, the Court explained that "[i]n any case presenting an ineffectiveness claim, the performance inquiry must be whether counsel's assistance was reasonable considering all the circumstances." *Id*. at 688. With regard to the required showing of prejudice, the proper standard requires the defendant to "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694. The Court then applied this newly articulated standard to the case before it, concluding that counsel's decisions were part of a strategy to "rely as fully as possible on respondent's acceptance of responsibility for his crimes." *Id*. at 699. Because trial counsel is afforded "wide latitude" in making these "tactical decisions," counsel's performance was therefore adequate. *Id*. at 689, 699. And as for the omitted

evidence, the Court concluded that the new material "would barely have altered the profile presented to the sentencing judge." *Id*. at 700. As a consequence, the petitioner was not entitled to relief. *Id*. at 701.

Any uncertainty regarding *Strickland*'s role in the present case results from the language of *Strickland* itself. By its own terms, the standard was originally limited to counsel's performance during the trial itself and at capital sentencing. The Supreme Court expressly reserved the issue of effective assistance at noncapital sentencing:

> The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. The same principle applies to a capital sentencing proceeding such as that provided by Florida law. *We need not consider the role of counsel in an ordinary sentencing, which may involve informal proceedings and standardless discretion in the sentencer*, and hence may require a different approach to the definition of constitutionally effective assistance. A capital sentencing proceeding like the one involved in this case, however, is sufficiently like a trial in its adversarial format and in the existence of standards for decision that counsel's role in the proceeding is comparable to counsel's role at trial . . . .

*Id*. at 686–87 (emphasis added) (citation omitted). Given this caveat, the parties stipulate that the assistance standard at

noncapital sentencing could not have been clearly established by *Strickland*.

As the district court observed, we have twice previously held that there is no clearly established law, as required under AEDPA for a federal court to provide habeas relief to a state prisoner, that the *Strickland* standard applies to sentencing in noncapital cases. *See Davis v. Grigas*, 443 F.3d 1155, 1158 (9th Cir. 2006), and *Cooper-Smith v. Palmateer*, 397 F.3d 1236, 1244 (9th Cir. 2005) ("Since *Strickland*, the Supreme Court has not decided what standard should apply to ineffective assistance of counsel claims in the noncapital sentencing context. Consequently, there is no clearly established law in this context."). That is a proposition not free from debate, as indicated by the concurring opinion by Judge Graber in *Davis*, where she questioned whether *Cooper-Smith* was correct on that point. *See Davis*, 443 F.3d at 1159 (Graber, J., concurring); *see also Davis v. Belleque*, 465 F. App'x 728, 729 (9th Cir. 2012) (per curiam) (Paez, J., concurring) (agreeing with Judge Graber's concurrence in *Davis*). Daire also argues that later Supreme Court decisions have made clear that the *Strickland* standard applies more generally, citing, for example, *Glover v. United States*, 531 U.S. 198, 201–02 (2001); *Premo v. Moore*, 131 S. Ct. 733, 737–38, 741–42 (2011); *Harrington*, 131 S. Ct. 770, 786 (2011); and *Lafler v. Cooper*, 132 S. Ct. 1376, 1385–86 (2012).

We see some merit to Daire's argument. It is clear that the *Strickland* standard, though originally limited by the *Strickland* opinion itself to capital sentencing, *see Strickland*, 466 U.S. at 686, now applies in contexts beyond that.

As a three-judge panel of this circuit, however, we are bound by prior panel opinions and can only reexamine them when "the reasoning or theory of our prior circuit authority is clearly irreconcilable with the reasoning or theory of intervening higher authority." *Miller v. Gammie*, 335 F.3d 889, 893 (9th Cir. 2003) (en banc). "This is a high standard." *Lair v. Bullock*, 697 F.3d 1200, 1207 (9th Cir. 2012) (internal quotation marks omitted). Were we writing on a clean slate, we might conclude that it was clearly established that the *Strickland* standard applies, but the slate is not clean.

In other circumstances, this panel would likely encourage the court to revisit this issue en banc. We do not need to do so here, however, because we conclude that Daire cannot prevail for another reason.

**IV.**

Even assuming, *arguendo*, that *Strickland*'s applicability is clearly established, Daire cannot prevail under the review standard imposed by the AEDPA. The AEDPA stops just "short of imposing a complete bar on federal court relitigation of claims already rejected in state proceedings." *Varghese v. Uribe*, 736 F.3d 817, 823 (9th Cir. 2013) (quoting *Harrington*, 131 S. Ct. at 786), *cert. denied*, 134 S. Ct. 1547 (2014). "It preserves authority to issue the writ in cases where there is no possibility fairminded jurists could disagree that the state court's decision conflicts with this Court's precedents. It goes no farther." *Harrington*, 131 S. Ct. at 786. Therefore, "[a]s a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error . . . beyond any possibility for fairminded disagreement." *Id*. at

786–87.  The district court concluded that Daire had met this onerous standard.  We review that conclusion *de novo*. *Hedlund v. Ryan*, 750 F.3d 793, 798 (9th Cir. 2014).

## A.

Before turning to the state court's adjudication of Daire's claim, some additional context may be helpful.  Daire contends that she was deprived of effective assistance when counsel omitted her mental illness from the *Romero* motion and subsequent hearing.  Prior to trial, counsel had arranged for a psychiatric evaluation by Dr. Mark E. Jaffe, M.D.  Dr. Jaffe reported preliminary diagnoses of bipolar disorder, anti-social personality disorder, and substance addiction.  He further noted that Daire had received treatment intermittently over the years, but "took her medications inconsistently." Daire had been in a treatment facility as recently as a few weeks earlier, but moved out after a dispute with another patient.  *Id.*  This was not the first time Daire had discontinued treatment—the physician reported that "[s]he has been in several treatment programs but had difficulties and left."  Dr. Jaffe ultimately concluded that Daire was "too unstable to live in the community," and recommended comprehensive in-patient treatment.  Counsel did not provide Dr. Jaffe with any of Daire's medical records, and apparently did not ask for an opinion on Daire's risk of recidivism.

Three years later, post-conviction counsel provided some of Daire's medical records to the same physician.  Dr. Jaffe was asked to clarify his original statements and to estimate the risk of recidivism in light of Daire's records.  He replied that Daire's bipolar disorder was readily treatable, but that

> Ms. Daire require[s] confinement in a locked environment for between one to two years before being released on parole. . . . [B]y 'too unstable to live in the community,' I meant that her antisocial impulses were too severe in combination with her mental illness and substance abuse, and that she was likely to commit additional criminal acts in order to obtain money to buy drugs, unless she had a period of confinement of between one to two years . . . [in which] specific treatment recommendations that I would outline were followed.

He further reported that Daire had never received proper medical treatment for her bipolar disorder and that her substance addiction probably could not be overcome without such treatment. The remainder of Dr. Jaffe's post-conviction letter was largely redundant of his earlier report.

In addition to having Dr. Jaffe review Daire's records, habeas counsel asked Daire to draft a statement recounting her traumatic history and the context of her most recent offense. Daire indicated that she had been evicted from her home and raped in the 48 hours before the burglary. She also complained that trial counsel had not interviewed any of her friends or family members regarding her character. This evidence was submitted to the Superior Court with Daire's state habeas petition.

**B.**

The state court's adjudication of Daire's claim was not an unreasonable application of the *Strickland* standard. Under

the AEDPA, review of counsel's performance is "doubly deferential," requiring both a "highly deferential look at counsel's performance," and additional deference to the state court's conclusions regarding that performance. *Pinholster*, 131 S. Ct. at 1403 (internal quotation marks and citations omitted); *see also Harrington*, 131 S. Ct. at 784 (requiring deference to state court unless there is "no reasonable basis" for its decision). With respect to Daire's ineffective assistance argument, the state court found "no evidence that Daire's trial counsel's performance fell below an objective standard of reasonableness." State Decision 3. This was not an unreasonable application of federal law.

Under California law, an attorney submitting a *Romero* motion should investigate a defendant's "background, character, and prospects," and then relay these findings to the court. *People v. Thimmes*, 138 Cal. App. 4th 1207, 1213, 41 Cal. Rptr. 3d 925, 929 (Ct. App. 2006). The state courts rejected Daire's argument after noting that counsel had done just that, explaining that she submitted a detailed *Romero* brief which included "a myriad of individualized considerations." State Decision 5 (quoting disposition of direct appeal, 2008 WL 4926956 at *7). Indeed, between the written motion and the hearing, counsel referred to Daire's poverty, her advanced age, the relatively inconsequential nature of her criminal record, her encounters with violence and abuse, and the fact that she was reportedly raped the day before the burglary. And although counsel never mentioned Daire's mental illness itself, she referred to Daire's seizures and substance addiction, and emphasized Daire's need for intensive treatment. Given the litany of mitigating factors presented at sentencing, it was reasonable for the state court to conclude that counsel had satisfied her constitutional obligation to Daire. *See Gonzalez v. Knowles*, 515 F.3d 1006,

1015 (9th Cir. 2008) (finding, upon *de novo* review, the omission of psychiatric evidence and family testimony reasonable where counsel presented "a number of mitigating factors" to judge).

Daire argues that her counsel's assistance was inadequate insofar as counsel failed to conduct a more thorough investigation into Daire's personal history. Even "less than complete" research is sufficient under *Strickland*, however, so long as "reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 691. The only argument made here is that counsel failed to fully investigate Daire's medical history. Yet trial counsel arranged for Dr. Jaffe's psychiatric evaluation of Daire in November of 2006. Based on the resulting report, counsel was fully justified in choosing not to pursue any additional information on the subject. A fair reading of the doctor's letter is at least as damaging to Daire's case as it is mitigating. For example, Dr. Jaffe indicated that Daire has a violent personality disorder, that she is unpredictable, and that she has a history of abandoning psychiatric treatment. The doctor explicitly stated that Daire is "too unstable to live in the community." It seems likely that a reasonable attorney would have recognized how counterproductive additional research might be, and might have made a strategic decision not to delve any further into Daire's psychiatric issues. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) ("[R]easonably diligent counsel may draw a line when they have good reason to think further investigation would be a waste."). Accordingly, Daire has not established that the state court's determination was unreasonable.

Counsel's decision not to refer to Daire's bipolar diagnosis was equally reasonable. Because there was

apparently not an evidentiary hearing on this issue, we cannot be certain as to the reason for the omission of a mental health defense. Nevertheless, we must presume that "the challenged action might be considered sound trial strategy." *Strickland*, 466 U.S. at 689 (internal quotation marks and citation omitted). After all, Daire's attorney arranged for the psychiatric evaluation and report. Accordingly, it seems counsel would have submitted the evidence that she herself procured if she thought it would help the case. Review of the written *Romero* motion suggests that counsel instead hoped to persuade the judge by portraying Daire as a misguided but largely harmless individual:

> The court cannot ignore that while Ms. Daire has continued in her criminal conduct she has been mostly motivated by her poverty, homelessness, and drug use. She has chosen homes where largely the residents have not been present. . . . Only once has her non-violent conduct turned potentially violent.

Similarly, at the *Romero* hearing counsel described Daire as "circumspect" in her burglary, and noted that she has only taken "things of minimal and nominal value" and only when the "residences [] were not occupied." Review of the trial record confirms that counsel chose to emphasize other mitigating factors, and apparently made a deliberate decision not to place Daire's health at issue. Over the course of the two trials, neither counsel nor Daire made any mention of her mental illness. In fact, when prosecutors seemingly alluded to Daire's psychiatric issues, defense counsel promptly

objected.**[4]**   So the record—far from suggesting that the absence of medical evidence at sentencing was an oversight or omission—suggests that the omission was part of a comprehensive effort to portray Daire as nothing worse than a petty thief.   As a consequence of the elected defense, counsel could not refer to Daire's mental health without undermining her primary argument that Daire was largely harmless.   When evaluating a petitioner's allegations regarding an evidentiary omission, we must consider "all the relevant evidence" that would have been revealed upon submission—"not just the mitigation evidence." *Wong v. Belmontes*, 558 U.S. 15, 20 (2009) (per curiam) (emphasis omitted).   Under California law, a defendant cannot submit excerpts of a physician's letter without disclosing the entire text to opposing counsel.   Cal. Evid. Code § 356.   And if Daire had revealed any "significant part" of a privileged medical record, she would have lost her privilege as to the remainder.   *Id*. § 912(a).   So counsel could not—as the district court implied—simply isolate the most sympathetic aspects of Daire's health to submit at trial and sentencing.

For example, if counsel had used excerpts of Dr. Jaffe's letter to argue that medical treatment would lower the risk of recidivism, prosecutors almost certainly would have countered with Daire's history of abandoning treatment programs.   Even worse, Dr. Jaffe reported that Daire showed anti-social tendencies and noted that her bipolar disorder results in manic fits of violence.   During the psychiatric

---

**[4]** Daire mentioned that on the day of the offense she had been "up for two days." *Id.*   When the prosecution asked how she had managed to "stay[] awake for two days," defense immediately objected. *Id.*   Counsel presumably anticipated that Daire's answer would refer to her cocaine addiction or her manic episodes, or both.

evaluation, Daire admitted several prior violent outbursts that included stabbing a friend with a butcher knife and assaulting a homeless man just "for fun." She also apparently tried to burn her family's house down. This is hardly the behavior one would expect from a harmless and "circumspect" individual. Yet if counsel had put Daire's mental health at issue, this ignominious resumé would have become fair game for the prosecution's use at trial and at sentencing.

We do not mean to belittle Daire's medical condition or suggest that her history is anything other than unfortunate. It seems likely that any violent disposition or mental illness Daire has is related to the shocking abuse Daire suffered as a child and young adult. As Dr. Jaffe himself stated, "[l]ike many women who are addicted to drugs and serve prison time, the defendant has an extensive history of trauma." So it is possible that—as the district court concluded—counsel would have been better off adopting an alternate strategy. Perhaps instead of trying to characterize Daire as harmless and non-violent, counsel should have conceded the violent psychiatric disorders and then argued that those disorders could be overcome with proper intervention. The law, however, does not permit us to second-guess the trial attorney's strategy. Instead, "every effort [must] be made to eliminate the distorting effect of hindsight." *Strickland*, 466 U.S. at 689. We must therefore resist the temptation "to conclude that a particular act or omission was unreasonable" simply because it "proved unsuccessful" at trial. *Id.*

For that reason, we cannot assume, as the district court did, that the mental health records provided "the most persuasive evidence to support the *Romero* motion." *Daire*, 2011 WL 7663701, at *7. Our precedent is clear that where a defendant's psychiatric history is both mitigating and

incriminating, trial counsel is best positioned to determine how to incorporate a diagnosis into the defense.**[5]** And as we have explained, informed counsel "need not present a defense just because it [is] viable." *Mickey*, 606 F.3d. at 1238. Here, although we cannot be certain as to why the psychiatric evidence was omitted, the record as a whole suggests that Daire's attorney devised an informed defense and a reasonable mitigating strategy, and that is all the Constitution requires.

## C.

The state court found an absence of prejudice in denying Daire's claim. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. It is therefore not sufficient for Daire to simply argue that the omitted evidence might have made her *Romero* motion stronger. In order to prevail before the state habeas court, Daire needed to demonstrate a "reasonable probability" that submission of additional medical evidence would have resulted in a successful motion and a concomitantly reduced sentence. *Id.* at 694. In other words, the alleged failure must have been

---

**[5]** *See Wong*, 558 U.S. at 18 (recognizing counsel's right "to proceed cautiously, structuring his mitigation arguments and witnesses to limit [the] possibility" that opposing counsel will gain access to damaging evidence); *Mickey v. Ayers*, 606 F.3d 1223, 1238–39 (9th Cir. 2010) (holding that omitting a mental health defense was reasonable where psychiatric records contradicted other elements of defense and would have "opened the door" to incriminating issues); *Hendricks v. Calderon*, 70 F.3d 1032, 1037 (9th Cir. 1995) (finding reasonable a counsel's decision to forgo mental health defense where it was not particularly persuasive and would have revealed criminal history).

egregious enough to "undermine confidence" in the outcome of the proceeding. *Id.* Although some jurists might find this standard satisfied, the state court's contrary conclusion was not unreasonable.

Daire was sentenced in accordance with California's so-called "three strikes" rule, which "consists of two nearly identical statutory schemes designed to increase the prison terms of repeat felons." *Rios v. Garcia*, 390 F.3d 1082, 1084 (9th Cir. 2004) (quoting *Romero*, 917 P.2d at 630, 13 Cal. 4th at 504, 53 Cal. Rptr. 2d at 791) (punctuation revised). The statutes have minor differences, but both provide that when a defendant is convicted of a felony, and the state proves that the defendant has committed certain prior felonies, the defendant is subject to greatly enhanced sentencing requirements. *Id.* at 1085; *see also* Cal. Penal Code §§ 667(c), 1170.12(a). There is, however, an exception to the rule. If a defendant so moves, a judge may disregard a prior felony under "extraordinary" circumstances. *People v. Carmony*, 92 P.3d 369, 376, 33 Cal. 4th 367, 378, 14 Cal. Rptr. 3d 880, 889 (Cal. 2004). Before doing so, the judge must determine that the defendant lies "outside the spirit" of the scheme such that he "should be treated as though he had not previously been convicted of one or more" of the strikes. *Id.* (quoting *People v. Williams*, 948 P.2d 429, 437, 17 Cal. 4th 148, 161, 69 Cal. Rptr. 2d 917, 948 (Cal. 1998)). To prevail on one of these "*Romero*" motions, a defendant must overcome the "strong presumption that any sentence that conforms to these sentencing norms is both rational and proper." *Id.* As a consequence, denial of a *Romero* motion is generally the expectation, not the exception. Here, as a fourth-strike defendant, Daire needed the judge to disregard two of her three prior felonies to even be eligible for a lesser

sentence. She therefore faced a considerable burden at the *Romero* hearing.

After reviewing the omitted evidence, we find reasonable the state court's conclusion regarding prejudice. Daire's medical history includes an ambiguous set of mitigating and incriminating factors. The sentencing judge rejected Daire's request for leniency after concluding that she is, essentially, an unrepentant recidivist: "[T]here is a substantial career of criminality in this defendant's background . . . . She has never been out for very long before she re-offends . . . ." The court on direct appeal apparently agreed with this characterization, finding no abuse of discretion and obliquely referring to Daire as having an "unrelenting record of recidivism." *Daire*, 2008 WL 4926956, at \*7. Indeed, in addition to the three residential burglary convictions, Daire's record includes convictions or arrests for loitering, tampering, possession of controlled substance, possession of narcotics, assault resulting in bodily injury, vehicular theft, and parole violations. *Id.* As the Superior Court tersely observed, it seems Daire only avoids trouble with the law when she is in prison. *See* State Decision 6.

Daire argues that she was prejudiced in that the judge received no information regarding the possibility that she could be rehabilitated with proper medical treatment for bipolar disorder. Regrettably, this argument is belied by the proffered evidence itself. Not only does her medical history not *undermine* the risk of recidivism, it only *underscores* the extent to which rehabilitation is unlikely. Although Dr. Jaffe observed that Daire could perhaps be "easily" reformed with in-patient treatment, the record indicates a clear pattern of abandoning treatment programs. For example, she left one program because she did not like living in a facility alongside

men, and left another after an altercation with a fellow patient. In fact, Dr. Jaffe himself concluded that Daire needed to be in a "locked environment" because she was "likely to commit additional criminal acts." He further cautioned that medical professionals could only effectively treat Daire if she chose to remain "clean and sober." Yet the doctor made no comment as to the extent of that commitment on Daire's part. Perhaps most damaging to Daire's argument is the fact that she was apparently undergoing treatment and taking her medications at the time of the most recent offense. Consequently, it was not unreasonable for the state court to conclude that "[e]ven if the trial court would have heard more argument concerning Daire's drug use, psychological issues, and childhood, Daire's sentence would not have been any different."**[6]**

We note, in addition, significant discrepancies in the letters provided by the consulting physician. In the original interview, Daire told Dr. Jaffe that she was taking Depakene at the time of the offense, and that she was being treated at a public health clinic. Depakene is a prescription medication used to treat manic episodes in bipolar patients. *See* Physicians' Desk Reference 417–22 (61st ed. 2007). Daire indicated that she had originally been prescribed that medication while living at Tarzana Treatment Center, and that it made her feel "mellow" and more stable. In the 2010 letter requested for habeas purposes, Jaffe contradicted his

---

**[6]** State Decision 4. It is not insignificant that the magistrate judge and district court judge disagreed as to whether this omission resulted in prejudice. Although the two judges arrived at contrary conclusions, they both provided carefully reasoned and legally defensible arguments in support of their respective positions. Under such circumstances, we would be hard-pressed to find the state's decision unreasonable. *See Harrington*, 131 S. Ct. at 786–87.

original letter, reporting no "indication that she was prescribed medications for Bipolar disorder while in the [Tarzana] program." This statement is puzzling, given Daire's contrary testimony and considering that the Tarzana discharge record—a copy of which was given to Jaffe—clearly lists a diagnosis of "296.62 bipolar disorder," and states that Daire was "medicated and compliant while in the unit." We need not resolve these factual discrepancies today. Nevertheless, the inconsistencies render more reasonable the state's conclusion regarding prejudice. In fact, the *Strickland* Court itself dealt with a similar discrepancy, ultimately finding "no reasonable probability that the omitted evidence would have changed the conclusion" at sentencing, and noting that the inconsistencies "might even have been harmful" to the defense. *See Strickland*, 466 U.S. at 676–77, 699.

Daire nevertheless tries to demonstrate prejudice by characterizing this particular judge as sympathetic to her cause. She points to a comment in the mistrial transcript regarding the weakness of the prosecution's case, specifically that "the court could attempt to undercut the people's offer, certainly on *Romero*, and I think there's a strong basis for that." But this comment implies little or nothing about the actual adjudication of the *Romero* motion, which was handled by a different judge.[7] Moreover, the merits of the motion had not yet been presented, so the mistrial judge might well have felt differently after reviewing the submissions. Daire also takes the sentencing judge's comments out of context by describing the *Romero* outcome as a "close" call. That

---

[7] Judge Michael A. Cowell handled the original trial, and Judge Margaret Miller Bernal presided over the retrial and subsequent sentencing.

characterization is belied by the record. The judge mistakenly thought the sentence would be fairly "close" (*i.e.*, substantially the same) regardless of whether she granted the motion. Yet even after counsel emphasized how lengthy a three-strikes sentence would be, the judge nevertheless chose to deny the motion and impose the forty-year sentence. *Id.* So there is little indication that awareness of Daire's bipolar disorder might have somehow tipped the balance in Daire's favor. Indeed, given that the judge was unpersuaded by an eviction and reported rape within 48 hours of the offense, it seems unlikely that Daire's dual-edged diagnosis—or anything else, for that matter—would have moved the court to leniency.

Finally, a recent *Romero* appeal supports the state court's conclusion that the motion would have been denied irrespective of the proffered mitigating evidence. *See generally People v. Miller*, No. H037246, 2013 WL 6710724 (Cal. Ct. App. 2013) (unpublished). The *Miller* court considered a direct appeal involving an individual quite similar to Daire. The defendant had committed three robberies to support his substance addiction, which he described as his "biggest challenge" in life. *Id*. at *1 & n.3. In seeking *Romero* relief from a three-strikes sentence, the defendant pointed out that he suffered from an untreated mental illness and that none of his offenses had been very serious. *Id*. at *1. He urged leniency, arguing that he was "homeless," "severely depressed," and in need of medical help. *Id.* In opposing the motion, prosecutors used those very same factual predicates to argue that defendant was prone to recidivism and simply "unable to live a sober, stable,

or productive life." *Id.* Agreeing with the prosecution and deeming the defendant a threat to public welfare, the sentencing judge denied the motion. *Id*. at *2. The appellate court affirmed, noting that *Romero* "does not compel a trial court to dismiss a prior strike simply because factors exist that may justify doing so," and emphasizing that "there continues to be a strong presumption that sentences that conform to the sentencing norms set forth under the Three Strikes law are both rational and proper." *Id*. at *6 (citing *Carmony*, 92 P.3d at 376, 33 Cal. 4th 367, 378, 14 Cal. Rptr. 3d 880, 889).

The parallels between Miller and Daire are readily apparent. In broad strokes, the only qualitative difference in their respective *Romero* arguments was that Miller's motion incorporated a mental health defense. And yet Miller's motion was denied in the same manner Daire's was. We do not mean to overstate *Miller*'s implications for the present dispute, as even a perfectly analogous case could not possibly reveal how Daire's *Romero* motion would have been resolved in light of her unique psychiatric history. Nevertheless, the *Miller* decision supports the state court's conclusion that submission of Daire's medical evidence would not have changed the outcome of the *Romero* hearing. Accordingly, we cannot say that there is no reasonable basis for that decision. *Harrington*, 131 S. Ct. at 784.

## V.

For the reasons stated, we conclude that the state court's decision was reasonable with respect to both prongs of *Strickland*. The federal courts are therefore precluded from affording the requested relief, irrespective of whether

*Strickland*'s applicability to noncapital sentencing is clearly established.  28 U.S.C. § 2254(d)(1).

**AFFIRMED.**

The costs on appeal shall be taxed against petitioner-appellant.