Filed 6/23/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | | |
|---|---|---|
| THE PEOPLE, | | |
| Plaintiff and Appellant, | | G057970 |
| v. | | (Super. Ct. No. 18NF2623) |
| TYSON THEODORE MAYFIELD, | | O P I N I O N |
| Defendant and Respondent. | | |

Appeal from a judgment of the Superior Court of Orange County, Roger B. Robbins, Judge. Reversed and remanded.

Todd Spitzer, District Attorney, and Elizabeth Molfetta, Deputy District Attorney, for Plaintiff and Appellant.

Gerald J. Miller, under appointment by the Court of Appeal, for Defendant and Respondent.

The members of this panel have enjoyed long careers in the practice of law. We've seen enough to make it difficult to shock us. But not, as it turns out, impossible.

Respondent Tyson Theodore Mayfield has an extensive criminal record that includes multiple acts of violence against racial minorities. In this case, he threatened to make a pregnant African-American woman "drop" her unborn baby while she was waiting at a bus station. As a third-strike defendant, respondent was facing a mandatory prison sentence of 25 years to life. However, the trial court dismissed one of his prior strike convictions in the interest of justice under Penal Code section 1385 and sentenced him to five years in prison.

The district attorney contends the dismissal constitutes an abuse of discretion, and we agree. Completely. Everything about respondent's crime and his record shouts for application of the Three Strikes law. There is nothing about his criminal history or personal character that suggests he somehow falls outside the spirit of the Three Strikes law. We therefore reverse the judgment and remand the matter for further proceedings.

FACTUAL AND PROCEDURAL BACKGROUND

Jasmine C. is an African-American woman who was eight months pregnant in September of 2018. That day, she was waiting at the Fullerton bus station for her boyfriend to pick her up when she heard respondent talking nearby. He was telling his two male companions how he hates "niggers" like Jasmine and "gets his kicks" by hurting pregnant black women. He also asked his cohorts if they wanted to see him go over to Jasmine and make her "drop her baby."

Jasmine became frightened. Her anxiety increased even more when respondent walked over to her and said, "I don't like pregnant niggers like you," "I'm going to make sure you drop your baby." Jasmine told respondent to stay away from her, but he continued to hurl racial epithets at her. Fearing for her safety, and the safety of her unborn baby, Jasmine took out her pepper spray and sprayed respondent with it.

2

In response, respondent grabbed Jasmine's backpack and left the scene momentarily. He then came running back toward her with his fists balled up and told her, "You're going to pay now, you nigger, I'm going to make sure you really drop this baby." By now, Jasmine was so terrified her body was shaking uncontrollably. She somehow managed to run to a nearby café and call the police before respondent was able to carry out his threat. Officers arrived a short time later and took him into custody.

He was charged with committing a hate crime by threatening Jasmine for the purpose of violating her constitutional rights and with the present ability to commit a violent injury or cause actual physical injury. (Pen. Code, § 422.7, subd. (a).)[1] The complaint also alleged one count each of making a criminal threat and petty theft. (§§ 422, 484/488.) And it included a sentence enhancement allegation that the criminal threat constituted a hate crime. (§ 422.75, subd. (a).) In addition, the complaint alleged two prior strike convictions (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C)), two prior serious felony convictions (§ 667, subd. (a)) and two prior prison terms (§ 667.5, subd. (b)). Those six recidivist enhancements were based on respondent's convictions for assault with a deadly weapon in 2005 and mayhem in 2008.

All told, respondent was facing a mandatory sentence of 25 years to life in prison under the Three Strikes law, plus 13 years for the remaining enhancements. At his arraignment he pleaded not guilty, and over the course of the next several months, his preliminary hearing was continued several times to facilitate a plea bargain. During that period, respondent was unable to reach a plea agreement with the district attorney. However, the trial judge indicated he would be willing to strike one of respondent's prior strike convictions and sentence him as a second-strike offender to five years in prison if he pleaded guilty to the charges.

---

[1]     All further statutory references are to the Penal Code.

3

The prosecution vehemently opposed this proposed disposition. On March 15, 2019, it filed a lengthy sentencing brief arguing the interests of justice did not support the trial judge's indicated sentence. According to the brief, respondent was convicted of 18 offenses during the 20-year period leading up his current crimes in 2018.[2] Eighteen – a remarkable number considering how much of those 20 years he spent in custody.

Most of these earlier convictions were for misdemeanors. However, in 2003, respondent was convicted of felony battery *on a police officer*, and in 2005, he suffered his first strike conviction for stabbing a man outside a liquor store. Respondent had no prior relationship with the man he stabbed. He just walked up to him, accused him of being a child rapist/murderer and slashed his face with a knife. Respondent received a two-year prison sentence for the attack. However, following his release from prison, he soon reoffended.

In 2006, respondent and a companion contacted a nonwhite couple at a gas station and asked them if they had any spare change. When the woman said no, respondent began making racist statements to her. Then he began punching the man in the face and did not relent until a bystander intervened. In the end, the man suffered a lacerated lip that required eight stitches and for a time hindered his ability to speak and eat. Respondent was convicted of battery with serious bodily injury and mayhem – his second strike conviction – and sentenced to nine years in prison.

---

[2] Here is a list of those convictions by date:
1997: Driving under the influence;
2000: Driving with a suspended license;
2003: Battering a police office, resisting arrest and using illegal drugs;
2004: Petty theft and disorderly conduct;
2005: Assault with a deadly weapon;
2006: Failure to appear in court;
2007: Assault and battery;
2008: Mayhem and battery with serious bodily injury;
2016: Driving under the influence;
2017: Hate crime, assault, battery, and driving under the influence.

That was in 2008. Following his release from prison, respondent was quickly convicted for drunk driving. And in 2017, one year before the instant case arose, he reoffended yet again. The victim in that case was a Turkish man with dark skin and dreadlocks. Respondent approached him outside a liquor store and asked for a light. When the man said he didn't smoke, respondent called him a "fucking nigger" and began pounding him with his fists. The incident led to respondent being convicted of a felony hate crime, but the trial court inexplicably reduced the conviction to a misdemeanor pursuant to section 17, subdivision (b) and sentenced him to a year in jail.

In addition to providing this information about respondent's prior cases, the prosecution's sentencing brief noted respondent has consistently violated the terms of his probation and parole throughout the years. The brief also reminded the court respondent presently had four misdemeanor cases *pending against him* that were unrelated to the present case. One of those cases was for punching a fellow inmate at the Orange County jail without provocation. Respondent boasted to jail authorities that he was not going to cease his violent behavior while in custody so long as he was forced to have contact with other inmates.

Given respondent's violent and racist conduct over the past two decades, including his actions in the present case, the prosecution's brief argued he was a threat to public safety and deserved to be incarcerated for an indeterminate life term pursuant to the Three Strikes law. Nevertheless, the trial judge stood by his indicated sentence of five years, which predictably prompted respondent to change his plea to guilty.

At the change of plea/sentencing hearing, the judge did not receive any information from the probation department because respondent had waived his right to a presentence report. However, the judge did confirm he had read the prosecution's sentencing brief, which was filed two months before the hearing. In addition, the judge heard from Jasmine C., who read her victim impact statement into the record.

5

Jasmine described how respondent accosted her at the bus station on the day in question, as set forth above. She said that when respondent called her a nigger and threatened to make her drop her baby, she was physically and emotionally traumatized and that, ultimately, she had to "run for [her] life" in order to get away from him. She also said the incident exacerbated her PTSD, and she was extremely worried that if respondent only received a five-year sentence, he would try to track her down and hurt her when he is released. In light of the tremendous anguish and anxiety respondent caused her, she believed he should be imprisoned for "a very long time," much longer than just five years.

Arguing on behalf of the People, Orange County District Attorney Todd Spitzer[3] described respondent as an "evil" and "dangerous" person whose history of racist behavior and actions toward Jasmine were "beyond alarming." Like Jasmine, the district attorney said he was very concerned that a five-year sentence for respondent would be insufficient to protect society and deter him from committing additional hate crimes against more innocent victims in the future.

For his part, defense counsel did not present any new facts or information for the court to consider, nor did he dispute any factual aspect of the prosecution's sentencing brief or Jasmine's victim impact statement. He simply did not believe the circumstances of respondent's present offense warranted an indeterminate life term.

The trial judge exercised his discretion under section 1385, and struck respondent's 2005 strike conviction in the interest of justice for the following reasons: 1) the circumstances surrounding the current offense "do not indicate a greater degree of danger to society[,]" 2) "[t]here was no injury to any person[,]" 3) "[t]here was no

---

[3] It is not typical in this county of three million for the district attorney to argue a sentencing. He usually leaves that to one of his 306 deputies. He thought this important enough to do himself.

6

weapon used[,]" 4) respondent's prior strike conviction is "14 years old and now remote in time," and 5) respondent was pleading guilty at an early stage of the proceedings.[4]

The judge sentenced respondent to a prison term of five years, representing the requisite double the two-year midterm on the criminal threats count, plus one year for the hate crime enhancement attendant to that count. In so doing, the judge not only struck respondent's 2005 conviction for purposes of the Three Strikes law, he also struck all of the prior serious felony and prior prison term enhancements. Sentencing on the remaining two counts was stayed pending the completion of respondent's five-year term. So a defendant with 38 years' exposure who had been sentenced to 9 years for his previous felony, got 5 years for this one.

## DISCUSSION

The district attorney contends the trial court abused its discretion in dismissing respondent's 2005 strike conviction. We agree.

As a preliminary matter, we address a procedural point raised by respondent. He contends the information in the district attorney's appellate brief regarding the underlying facts of the case and respondent's criminal history is "distorted and one-sided" because it was derived entirely from the sentencing brief the prosecution filed in the trial court. Respondent claims the information in the sentencing brief cannot be trusted as a basis to impugn the trial court's ruling because there is no indication where it came from or whether it is reliable.

However, in addition to including information from the prosecution's sentencing brief, the district attorney's appellate brief also contains a full two-page description of Jasmine's victim impact statement. That statement, which provides a detailed account of what respondent did to Jasmine at the bus station, was filed with the

---

[4] As an additional justification for his decision, the judge stated, "The current offense is not a violent or serious felony[.]" However, after the district attorney pointed out that making a criminal threat is a serious felony (see § 1192.7, subd. (c)(38)), the judge retracted that statement.

trial court and read out loud by Jasmine at the sentencing hearing without objection from respondent. The trial court properly considered it, and so may we. (§ 1191.1; *People v. Jones* (1992) 10 Cal.App.4th 1566, 1574.)

As for the information in the district attorney's appellate brief pertaining to respondent's criminal record and the circumstances surrounding his prior offenses, respondent is correct in saying that information came exclusively from the prosecution's sentencing brief. However, while respondent assails that information as inaccurate and biased, he did not object to it below, nor did he file his own sentencing brief in the trial court, despite having over two months to do so from the time the People filed their brief until the time the sentencing hearing was conducted. Nor does he identify any specific inaccuracies. In light of these circumstances, and given the fact respondent expressly waived his right to a presentence probation report, he is in no position to complain about the accuracy of the information contained in the district attorney's filings. (See generally *People v. Scott* (1994) 9 Cal.4th 331 [the forfeiture rule – which is designed to encourage prompt detection and correction of error, and to reduce the number of unnecessary appellate claims – precludes the parties from raising procedural sentencing issues for the first time on appeal].)

Respondent also faults the district attorney for failing to supply the trial court, and by extension this court, with any facts about his personal background, prospects or character. But as the party seeking section 1385 relief in the trial court, it was respondent's duty to provide this information to the court. (*Daire v. Lattimore* (9th Cir. 2016) 818 F.3d 454, 464: *People v. Thimmes* (2006) 138 Cal.App.4th 1207, 1213.) He offered nothing. There was thus nothing before the trial judge to suggest he should exercise his discretion in favor of the respondent. Character and prospects cannot be evaluated by looking at people, and that's all the trial judge had to go on here. The record shows the prosecution addressed respondent's character and prospects in its sentencing brief, describing them as "poor" and "not good" respectively, and there is

8

nothing in the record to contradict this assessment. Indeed, we think his character speaks for itself. For all of these reasons, we do not believe there is any basis for disregarding the information contained in the prosecution's sentencing brief or the district attorney's statement of facts on appeal.

We now turn to the merits of the trial court's decision to dismiss respondent's prior strike conviction. We do so fully cognizant of the discretion vested in trial courts in the area of criminal sentencing. We are always loath to reject the exercise of such discretion. But this is not a close call.

In reviewing this decision, we must keep in mind the Three Strikes law is designed to "punish repeat criminal offenders severely" and "drastically curtail a sentencing court's ability to reduce the severity of a sentence by eliminating alternatives to prison incarceration[.]" (*People v. Vargas* (2014) 59 Cal.4th 635, 641.) To that end, the law mandates the imposition of a 25-year-to-life prison sentence in cases – such as this one – where the defendant is convicted of a serious or violent felony and has previously been convicted of two such felonies. (§§ 667, subd. (e)(2)(C), 1170.12, subd. (c)(2)(C).) In other words, "If, after having suffered two qualifying felony convictions, an offender commits a third qualifying felony, the Three Strikes law presumes he or she is incorrigible and requires a life sentence." (*People v. Vargas, supra,* 59 Cal.4th at p. 638.)

That doesn't mean trial courts are powerless to deviate from the Three Strikes law. Under section 1385, the trial court is empowered to strike a prior strike conviction "in the furtherance of justice." (§ 1385, subd. (b); *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497, 529-530.) However, that great power should only be used in "extraordinary" circumstances, when the ends of justice demand it. (*People v. Carmony* (2004) 33 Cal.4th 367, 378; *People v. Strong* (2001) 87 Cal.App.4th 328, 337–338.)

9

In determining whether such circumstances exist in a given case, the trial court must balance society's legitimate interest in imposing longer sentences for repeat offenders and the defendant's constitutional right against disproportionate punishment. (*People v. Superior Court (Romero), supra*, 13 Cal.4th at pp. 530–531.)  It must also consider the nature of the defendant's present felonies and prior strike convictions, as well as his background, character and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161 (*Williams*).)  And, of course, the court must remember the Three Strikes law is not discretionary in nature.  Rather, the law must be applied when the defendant has two or more prior strikes, unless the court concludes an exception to the law should be made because, *for articulable reasons that can withstand scrutiny for abuse*, the defendant lies outside the spirit of the law such that he should be treated as though he had not previously been convicted of one or more strikes.  (*Ibid*.; *People v. Carmony, supra*, 33 Cal.4th at p. 376.)

In this case, the trial court's stated reasons for striking respondent's prior strike conviction do not withstand scrutiny.  Although the abuse-of-discretion standard of review is deferential, it is not sycophantic.  And here we deal with a statute passed specifically to *limit* the court's discretion.  Reversal is required here because the trial judge's stated reasons reflect an unreasonable application of the sentencing principles discussed above to the facts of the case before him.  (*Williams, supra,* 17 Cal.4th at p. 161.)

In striking respondent's prior strike conviction, the trial judge focused primarily on the nature of his current crimes against Jasmine.  The judge did not believe those offenses posed a great degree of danger to society as compared to other crimes because respondent did not use a weapon or cause Jasmine injury.  It is true respondent did not use a tangible weapon, such as a knife or a gun, during his encounter with Jasmine.  However, he was so aggressive and hateful toward her, so frighteningly intense, she resorted to pepper spray to protect herself.  And even that did not deter respondent;

instead of backing off after being sprayed, he ran toward Jasmine brandishing his fists and threatening her, "Now you're going to pay, nigger. Now I'm going to make sure you really drop your baby."

The result was an eight-month pregnant woman running for her life – and the life of her unborn child – from declarations of overt and despicable intent. Surely the language used here – "Now you're going to pay, nigger" – addressed to a pregnant woman demonstrates a danger to society as clearly as displaying a knife or a screwdriver.

Indeed, respondent's prior offenses demonstrate the dangerous import of his threats. Even though respondent was not armed with a physical weapon when he attacked his victims in 2006 and 2017, he was able to make them "pay" with his bare hands. Indeed, in both of those cases, respondent repeatedly beat his victim about the head and face without any provocation whatsoever. And as a result of the 2006 attack, his victim needed eight stiches to his lacerated lip and could not eat or talk without considerable difficulty.

What's more, defendant had already gotten a pass on his first formally charged hate crime in 2017. This was not an isolated instance of uncontrolled detestability. He had a history of such conduct – including an attack on a law enforcement officer.

Jasmine did not suffer similar physical injury. But when she addressed the court at sentencing, she said the incident with respondent affected her both "emotionally and physically" and that it put a lot of stress on her and her unborn baby. She described how her heart began to race and her legs began to shake when respondent confronted her. And how she had to "run for [her] life" when respondent came running toward her. She also said the incident worsened her PTSD and that she continues to live with the fear

11

respondent will track her down and hurt her after he is released from prison, simply because of the color of her skin.[5]

In that regard, Jasmine made it clear respondent's actions toward her were particularly painful because they were racially degrading and motivated by bigotry. Having been the victim of a hate crime, Jasmine said she will never forget what respondent put her through that day. The incident served as a grim reminder to her that "the world is full of hate" and how difficult it is to deal with racial violence and hatred on a personal level.

The trial judge did not mention the race issue in granting respondent leniency. However, this is not the first time respondent has laced his criminal behavior with racist statements. As he did to Jasmine in this case, he called his Turkish victim a "nigger" when he attacked him a year earlier. He also made racist comments toward the couple he confronted at a gas station in 2006 before going off on the man for no apparent reason. As our nation's highest court has recognized, the defendant's motive for offending is an important factor in the sentencing equation. (*Wisconsin v. Mitchell* (1993) 508 U.S. 476, 485.) When the defendant's criminal behavior is driven by racist attitudes, greater punishment is generally deemed warranted on the basis such conduct inflicts unique harm to both the individual victim and society as a whole. (*Id*. at pp. 487-488; accord, *In re M.S.* (1995) 10 Cal.4th 698, 726 ["hate crimes injure members of the protected class and society more severely than do random crimes"].)

What the Supreme Court did not say but we find considerable here is that racism and misanthropy are motives that are not likely to diminish or disappear. A defendant who boasts about his fights with other inmates and has a long and depressing history of random violence is not likely to emerge from whatever portion of five years his sentence requires him to serve with a thoughtful and pacific approach to his fellow man.

_____

[5] A not unreasonable concern given his history.

Suffice it to say, we do not believe the nature of respondent's current offenses is in any way mitigating, let alone a sufficient basis for striking his prior strike conviction. The offenses were not as serious as some crimes, to be sure, but considered in light of respondent's criminal history – and with a complete and utter absence of *any* mitigating "character and prospects" evidence – they represent the continuation of respondent's disturbing penchant for victimizing innocent minorities in our community. By virtue of his prior offenses, respondent has shown he is fully willing and able to inflict great physical harm on his victims, and there is nothing to suggest he would not have done so again in this case, had Jasmine not been able to flee the scene and summon help from the police.

In dismissing respondent's prior strike conviction, the trial judge also relied on the fact the conviction was 14 years old at the time of sentencing. The judge felt this circumstance rendered the conviction too remote to use it against respondent at this stage of his criminal career, but as our Supreme Court's decision in *Williams* illustrates, older strike convictions do not deserve judicial forgiveness unless the defendant has used them as a pivot point for reforming his ways.

In *Williams*, the defendant had suffered two prior strikes and served three prison terms by the time he committed his third strike offense by driving under the influence of PCP. As part of an indicated sentence, the trial judge struck one of his strikes under section 1385 and sentenced him as a second-strike offender to nine years in prison after he pleaded guilty to the charges. The judge felt that result was justified because the prior strike was 13 years old and the defendant's record since that time had not been sufficiently egregious to warrant an indeterminate life term. However, the Supreme Court did not see it that way.

On review, the *Williams* court found the striking decision constituted an abuse of discretion given the length and severity of the defendant's criminal record. While the court recognized 13 years passed between the time of the defendant's strike

13

convictions, it found that mattered little because he did not refrain from criminal activity during that interim period. To the contrary, he committed multiple misdemeanor and felony offenses, including one involving actual violence, and he performed poorly on probation and parole. The *Williams* court saw this as proof the defendant had not changed from the time of his prior offenses and was thus undeserving of leniency under section 1385. Accordingly, the court reversed the trial court's striking decision and remanded the matter to permit the defendant to withdraw his guilty plea. (*Williams, supra*, 17 Cal.4th at pp. 163-165.)

Like the defendant in *Williams*, respondent failed to reform his behavior during the decade-plus that elapsed between his first strike conviction and his third strike conviction. Instead, he continued to do the same thing he has been doing since 1997: break the law on a remarkably regular basis and with reckless abandon. Following his first strike conviction in 2005 for slashing a man's face with a knife, he went on to commit over a dozen more offenses, including his present crimes in 2018. As detailed above, many of those offenses involved actual violence and were utterly unprovoked.

What's even more astonishing is that the 13-year period respondent wants to rely on was one in which he *spent over 10 years in jail or prison*. Despite spending more time in custody between strikes than the defendant in *Williams*, respondent managed to rack up just about the same number of convictions.

Respondent was also given a tremendous break in 2017 when the court reduced his felony hate crime to a misdemeanor. This enabled him to avoid the imposition of a lengthy prison sentence at that time.[6] Yet, before the dust settled on that case, he went out and committed another hate crime, against Jasmine. His unrelenting criminal behavior since suffering his first strike conviction in 2005 demonstrates him to be an unchanged man, with a stubborn character and no discernible prospects for reform.

---

[6] The record does not reflect how in the world that happened.

14

We therefore do not believe his first strike conviction was what the law considers cognizably remote for purposes of the Three Strikes law. (*Williams, supra*, 17 Cal.4th at pp. 162-164; *People v. Humphrey* (1997) 58 Cal.App.4th 809, 813 [reversing order dismissing 20-year-old strike conviction because the defendant led "a continuous life of crime" after that conviction]; *People v. Gaston* (1999) 74 Cal.App.4th 310, 321 ["the remoteness in time of the (defendant's 17-year-old) strike priors is not significant in light of (his) continuous crime spree, which has substantially spanned his entire adult life"]; compare *People v. Bishop* (1997) 56 Cal.App.4th 1245 [upholding the dismissal of two prior strike convictions that were 17 to 20 years old where the defendant's criminal activity since those convictions was limited to a handful of minor offenses].)

That brings us to the final factor the trial court cited to justify its sentencing decision in this case, namely, that respondent pleaded guilty at an early stage of the proceedings. While this circumstance is relevant to our analysis, *Williams* teaches the mere presence of some mitigating circumstances cannot insulate a trial court's decision to strike a prior strike conviction against a charge of abuse of discretion. (See *Williams, supra*, 14 Cal.4th at p. 163 [finding an abuse of discretion despite evidence the defendant had a stable living arrangement, was a caring father, and was still loved and supported by his family].) Respondent may have saved the state some expense by pleading guilty early on in this case, but his extensive criminal record proves he is "an exemplar of the 'revolving door' career criminal to whom the Three Strikes law is addressed." (*People v. Stone* (1999) 75 Cal.App.4th 707, 717.) Any expense saved the state by his plea would likely be re-incurred with interest if he gets out in five years and there are still bus stops.

All of this convinces us the trial court abused its discretion in offering him a reduced sentence. Wisely anticipating we might reach this conclusion, respondent's counsel asks that we remand the matter to permit him to file a sentencing brief or other documentation that might somehow justify the trial court's sentencing decision. However, respondent had every opportunity to do so prior to his sentencing hearing; he is

not entitled to another bite at the apple. The *Williams* decision makes clear that when, as here, the defendant's guilty plea was motivated by the court's indicated willingness to strike a prior strike conviction, the proper remedy is to reverse the judgment and remand the matter to allow the defendant to withdraw his guilty plea and proceed without that willingness complicating his decisions. (*Williams, supra*, 17 Cal.4th at p. 164.) Given this remedy, we decline respondent's invitation to simply remand the matter for the presentation of further evidence. All charges and enhancements will be reinstated and the case returned to status quo ante the court's offer.

We also find it unnecessary to consider the district attorney's claim that, not only did the trial court abuse its discretion in striking respondent's prior strike conviction, it abused its discretion by striking his prior serious felony convictions and his prior prison terms. Whether respondent deserves to have one or more of those enhancements stricken is something the trial court can revisit should it be in a position to resentence him in the future. While we do not rule out the possibility such relief may be warranted if respondent is ultimately convicted and sentenced to 25 years to life in prison under the Three Strikes law, we express no opinion on that issue at this stage of the proceedings.

DISPOSITION

The judgment is reversed and the matter is remanded to permit respondent to withdraw his guilty plea and plead anew.


BEDSWORTH, ACTING P. J.

WE CONCUR:


FYBEL, J.


THOMPSON, J.