[No. H028897. Sixth Dist. Apr. 26, 2006.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID MICHAEL THIMMES, Defendant and Appellant.

## COUNSEL

Gloria C. Cohen, under appointment by the Court of Appeal, for Defendant and Appellant.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gerald A. Engler, Assistant Attorney General, Martin S. Kaye and Michael E. Banister, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**PREMO, J.**—A five-count complaint charged defendant David Michael Thimmes with possession of cocaine (Health & Saf. Code, § 11350, subd. (a), count 1), being under the influence of a controlled substance (*id.*, § 11550, subd. (a), count 2), possession of paraphernalia (*id.*, § 11364, count 3), and violation of a protective order (Pen. Code, § 273.6, subd. (a), counts 4 and 5).[1] Count 1 was the only felony charged. The complaint also alleged one prior strike conviction. (§§ 667, subds. (b)–(i) and 1170.12 (the "Three Strikes" law).) Pursuant to a court-negotiated agreement, defendant pleaded no contest to all five counts and admitted the strike allegation in exchange for a promise of no more than 32 months in prison.

At sentencing, the trial court denied defendant's *Romero*[2] motion and sentenced defendant to the agreed-upon maximum of 32 months. The term represents the mitigated term for the possession conviction, doubled for the strike offense. (Health & Saf. Code, § 11350, subd. (a); Pen. Code, §§ 667, subds. (b)–(i), 1170.12.)

On appeal, defendant argues that he received ineffective assistance of counsel because the trial court denied his *Romero* motion based upon a mistake of law to which his counsel failed to object.

We shall reverse and remand the matter with instructions to the trial court to hold another *Romero* hearing.

---

[1] Further undesignated code references are to the Penal Code.

[2] *Romero v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 [53 Cal.Rptr.2d 789, 917 P.2d 628] (*Romero*).

## I.  FACTS

At the time of his arrest on July 12, 2004, defendant was 52 years of age. The victim of the restraining order violations was defendant's wife of nearly 20 years. The victim had filed for divorce less than a year before. She had obtained a restraining order against defendant because of his persistent emotional and verbal abuse of her and his history of threatening others. Defendant continuously violated the restraining order and had five convictions for those violations. He was placed on probation in each case. Defendant was arrested in the instant case after the victim discovered him driving by her residence. The arresting officer observed that defendant appeared to be under the influence of a stimulant. Cocaine and drug-related paraphernalia were found in defendant's vehicle. Defendant was charged as described above.

The strike offense alleged in the complaint was a 1999 conviction for making a criminal threat (§ 422). Defendant had been bothered by construction near his residence. On the date of the crime, defendant confronted one of the workers about putting up a tarpaulin. He stated: "If you put that tarp back up, I'll take a baseball bat and break it up." The victim attempted to ignore the outburst and defendant responded: "If you keep doing that, I'm gonna load my gun and blow your fucking brains out." When the police contacted him, they discovered that defendant had two handguns inside his residence. Defendant was granted probation, which he successfully completed.

Defendant had a psychological examination to determine whether he was mentally competent to stand trial. (§ 1368.) The examiner concluded that, although defendant had low cognitive function and mental health problems, he was able to understand the criminal proceedings against him.

Defendant pleaded no contest to all counts. With respect to the prior conviction allegation, he stated: "I admit it. But I still don't understand. When I was put in that case I was told by the judge that after I completed the whole program on that case, they would expunge it, and it would be reduced down to a misdemeanor; and they never did that." Defendant's counsel informed the court that he had researched the issue and found that the prior offense had never been reduced to a misdemeanor.

Two psychological reports were attached to the probation report. Both indicate defendant's cognitive function was low. One report rated his IQ at 78, which puts him at the "Upper End of the Borderline Range of Intellectual Functioning." The report goes on to explain: "He appears to be using some

obsessive compulsive defenses to hold himself together psychologically, but there is significant indication that he has decompensated badly into some form of psychosis, possibly undifferentiated schizophrenia. There are also significant indications of neuropsychological brain damage, most likely from drugs and/or alcohol, but also possibly from some form of progressive disease/condition, such as some form of dementia. . . . [Defendant] appears to be a person who has lost all sense of rootedness and all sense of accountability. Memory, and concept formation, as well as applied and abstract reasoning abilities have never been great, but there is indication here of significant decompensation."

The probation officer acknowledged in her report that the 1999 offense was "not of a particularly violent nature" and that the current felony is not "particularly serious." During the *Romero* portion of the sentencing hearing, defendant's counsel stressed that indeed, if it were not for the strike, the present felony would not have resulted in any prison time. And, he argued, the prior crime might have been reduced to a misdemeanor if defendant had "gone back to his attorney after some period on probation."

Counsel also pointed to defendant's mental deficiencies as a reason to find that his case fell outside the spirit of the law. Defendant had a difficult time in jail, was attacked by an inmate and suffered a stab wound to his ear. "He suffers in both psychological and physical disorders that would make his life in prison particularly difficult." Defendant planned to move to Southern California. Counsel identified a family in Long Beach with whom defendant planned to live. This, he said, would "take him out of the environment where he was so obviously fixated in an obsessive, compulsive way on his ex-wife." Defense counsel complained that the prior strike was being used merely to keep defendant away from the victim.

The prosecutor agreed that the underlying crime (possession of cocaine) "is relatively not serious." He argued, however, that the multiple misdemeanors were extremely serious. The trial court interrupted the argument at this point to clarify: "Isn't the crux of the matter what the [section] 422 of 1999 does to him? If you did this, then the court shall double the term; is that correct?" The court directed the prosecutor to a discussion of the section 422 violation, noting that defendant was found to have two handguns inside his residence at the time. After the prosecutor provided more of the details surrounding the section 422 violation, the court asked whether defendant had successfully completed probation in that case and then asked defense counsel whether, when defendant entered his plea to the 1999 crime, he had been apprised of the

effect conviction would have on a future conviction. Defense counsel could not say for sure whether defendant had been warned at the time that the conviction could be used as a strike. It was determined that defendant had successfully completed probation, although he could have been violated for committing a petty theft in 2000. He was otherwise crime free until 2003, when his former wife first obtained the restraining order against him.

The court decided not to strike the strike. "I think if we look at the three strikes law, the third strike—it helps increase punishment along the way. I presume that [defendant] was warned about, when he committed the [section] 422, what would happen should he commit another felony. That day has come. He has committed another felony. He has to bear that burden. [¶] I find that even though his case is a pitiful one, and he is as reported by the physician's report, he does come within the spirit of the three strikes law."

## II. Discussion

Defendant's argument on appeal turns upon his assumption that the trial court chose not to strike the prior conviction allegation because defendant had been warned of its consequences when he suffered the prior conviction in 1999. As defendant points out, he could not have been so warned because violation of section 422 was not included in the list of serious felonies for purposes of the Three Strikes law until 2000. (See Historical and Statutory Notes, 50D West's Ann. Pen. Code (2004 ed.) foll. § 1192.7, pp. 88–90.) According to defendant, his attorney provided constitutionally ineffective assistance by not informing the court of that fact. (See *Strickland v. Washington* (1984) 466 U.S. 668, 684–685 [80 L.Ed.2d 674, 104 S.Ct. 2052]; *People v. Pope* (1979) 23 Cal.3d 412, 422 [152 Cal.Rptr. 732, 590 P.2d 859].)

■ To demonstrate constitutionally ineffective assistance of counsel, a defendant has the burden of proving two things. First, defendant must show that counsel's performance was unreasonable when measured by prevailing professional norms. Second, defendant must show that there is a reasonable probability that, but for counsel's acts or omissions, the result of the proceeding would have been more favorable to the defense. (*Strickland v. Washington, supra*, 466 U.S. at pp. 687–688.)

■ A standard of reasonable competence requires defense counsel to diligently investigate the case and research the law. (Cf. *People v. Pope, supra*, 23 Cal.3d at p. 425.) Counsel failed to determine that defendant had not been warned, or that he could not have been warned, that his 1999 conviction would count as a strike. The failure clearly fell below a standard of reasonable

competence. The question remains whether counsel's performance was prejudicial.

As the Supreme Court explained in *Romero*, section 1385 permits a trial court to strike an allegation of a prior felony conviction in cases brought under the Three Strikes law, in the interests of justice. (*Romero*, *supra*, 13 Cal.4th at pp. 529–530.) In making its decision, the court must consider both the constitutional rights of the defendant and the interests of society represented by the People. (*Id.* at pp. 530–531.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation . . . the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161 [69 Cal.Rptr.2d 917, 948 P.2d 429].)

In this case, the trial court impliedly found that defendant's background, character, and prospects weighed in favor of striking the strike since the court chose not to do so "*even though* his case is a pitiful one, and he is as reported by the physician's report." (Italics added.) Neither the present offense nor the prior conviction was particularly serious or violent. The "crux" of the issue, in the trial court's view, was simply the effect of the prior conviction: "[i]f you did this, then the court shall double the term." In making its ruling, the court again referred to the effect of the Three Strikes law, stating that the court presumed that defendant had been warned "what would happen should he commit another felony. That day has come. He has committed another felony. He has to bear that burden." This language suggests that the trial court determined to apply the letter of the law and allow the prior conviction to operate upon the present conviction *because* defendant had previously been warned of the consequences.

It is true that, when entering a guilty plea, a defendant "need not be advised of the possible future use of a conviction in the event the defendant commits a later crime." (*People v. Bernal* (1994) 22 Cal.App.4th 1455, 1457 [27 Cal.Rptr.2d 839].) But here, the trial court presumed that defendant had been warned. That presumption is not, as the Attorney General argues, immaterial. The presumption carried some weight in the court's determination that defendant fell within the spirit of the Three Strikes law. Absent the weight of that presumption, there is a reasonable probability that the court would have reached a different conclusion. Thus, counsel's performance was constitutionally ineffective.

## III.  DISPOSITION

The judgment is reversed. The matter is remanded to the trial court to conduct another *Romero* (*People v. Superior Court* (*Romero*), *supra*, 13 Cal.4th 497) hearing.

Rushing, P. J., and Elia, J., concurred.