Filed 5/16/16  P. v. Costanza CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

THE PEOPLE,

    Plaintiff and Respondent,

        v.

ROCCO ANGELO COSTANZA,

    Defendant and Appellant.

F070200

(Super. Ct. Nos. CRF39951, CRF41410)

**OPINION**

-ooOoo-

## THE COURT[*]

APPEAL from a judgment of the Superior Court of Tuolumne County.  James A. Boscoe, Judge.

Robert Derham, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Louis M. Vasquez and Nora S. Weyl, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

[*]    Before Kane, Acting P.J., Detjen, J. and Peña, J.

Appellant Rocco Angelo Costanza appeals the sentences imposed for his convictions of battery causing serious bodily injury (Pen. Code, § 243, subd. (d)/count 1)[1] and assault by means of force likely to cause great bodily injury (§ 245, subd. (a)(4)/count 2).[2]  Appellant contends his counsel was ineffective at sentencing for not seeking to strike one or more of his prior convictions.  He further argues that his sentence violates constitutional prohibitions on cruel and unusual punishment.  For the reasons set forth below, we affirm.

### FACTUAL AND PROCEDURAL BACKGROUND

*Conduct Leading to Arrest*

Appellant's current conviction arises out of a violent confrontation.  On June 4, 2013, at around 11:30 p.m., Laurel Young and her fiancé Jeffrey Buchanan took their dog for a walk near their home in Sonora.  As they began their walk, Ms. Young and Mr. Buchanan encountered appellant.  Appellant approached the couple asking, "How you doin'?" with an East coast inflection.  When Ms. Young replied, "Fine.  How are you?" appellant ignored her and continued walking.  Despite finding appellant's conduct weird, Ms. Young and Mr. Buchanan continued their walk.

As Ms. Young and Mr. Buchanan were walking home, they again encountered appellant.  This time appellant was squatting down, talking to a tree on the side of the road, while acting like a monkey and growling.  Fearful of the situation, Ms. Young tried to call 911 and picked up a rock.

---

[1]    All statutory references are to the Penal Code unless otherwise noted.

[2]    We previously granted appellant's motion to construe his notice of appeal to cover the sentences imposed in Tuolumne County Superior Court case Nos. CRF39951 and CRF41410.  Appellant's convictions for battery and assault derive from case No. CRF41410.  Appellant makes no argument that would directly affect his sentence in case No. CRF39951, which was imposed for a parole violation triggered by appellant's conviction in case No. CRF41410.  But we note the sentence in case No. CRF39951 was imposed during the same proceedings as, and immediately following, the sentence in case No. CRF41410.

Ms. Young asked appellant, "What's your name?" Appellant responded in a mocking, "sing-song" tone, repeating "What's your name? What's your name?" loudly, while continuing to posture like a monkey. Appellant then moved toward Ms. Young and Mr. Buchanan. Ms. Young attempted to hit appellant in the throat with her rock, but failed. Appellant grabbed Ms. Young and threw her into the street.

At this point, Mr. Buchanan yelled at appellant. Appellant then moved towards Mr. Buchanan and the two began fighting. In the course of that confrontation, appellant picked up Mr. Buchanan and slammed him into the concrete multiple times, causing Mr. Buchanan to lose consciousness. Appellant then left, acting like a gorilla as he headed down the street.

### Criminal Proceedings and Trial

Appellant was arrested and charged with battery causing serious bodily injury and assault by means of force likely to cause great bodily injury. It was further alleged that appellant had been twice convicted of serious or violent felonies. Once in 1991 for robbery (§ 211) and once in 2013 for making criminal threats (§ 422). These same prior convictions were alleged as enhancements under sections 667, subdivision (a)(1), and 1203, subdivision (e)(4).

At his June 2013 hearing, the court ordered an evaluation of appellant's mental competency under section 1368. The evaluation, conducted by Dr. Gary Cavanaugh, diagnosed appellant with an unspecified psychotic disorder and an unspecified impulse control disorder before concluding that appellant was "not competent to stand trial as defined under Penal Code Section 1368" based in part on "his probable delusional interpretation of the events the [sic] led to his arrest." At the July 31, 2013 hearing before Judge Douglas Boyack, appellant was declared incompetent. And at the September 13, 2013 hearing before Judge Eleanor Provost, appellant was ordered to attend an inpatient program.

Based on the treatment provided, appellant was ultimately deemed competent to stand trial. Prior to trial, appellant admitted to the validity of the two alleged priors with respect to their status as serious or violent felonies constituting strikes under sections 1192.7, subdivision (c), and 667, subdivisions (b) through (i); their status as consecutive five-year sentence enhancements under section 667, subdivision (a); and their status as ineligibility factors for probation. As part of these admissions, appellant was informed that his sentence, if convicted of the two charged counts and enhancements, would be 37 years to life.

At trial, before Judge James Boscoe, appellant testified on his own behalf. He claimed not to have said anything to Ms. Young and Mr. Buchanan, and contended he was walking along, doing stretches, when he was approached by Ms. Young. He claims Ms. Young made contact first, hitting him around the wrist, and that he "deflected her wrist." At that point, appellant claims Mr. Buchanan came "running straight at [him] in a dead run ... out of the bushes or something," and that appellant defended himself. The jury convicted appellant on both counts.

### *Sentencing*

At sentencing, the court received and reviewed the probation officer's report as well as several letters submitted on appellant's behalf. Two of those letters were submitted by former jurors in the matter and contained their view that appellant may be mentally disturbed. The probation officer's report listed two convictions for robbery from 1991. The report listed six factors in aggravation for each count: (1) the crime involved great violence or other acts disclosing a high degree of cruelty, viciousness, or callousness, in that the victims were attacked without provocation; (2) appellant had engaged in violent conduct, which indicated a serious danger to society; (3) appellant's prior convictions were numerous and of increasing seriousness; (4) appellant had served two prior prison terms; (5) appellant was on probation when the crime was committed; and (6) appellant's prior performance on probation and parole was unsatisfactory. In

4

contrast, the report only identified one potential mitigating factor; that appellant may have been suffering from a mental or physical condition at the time the crime was committed. When asked whether there were any corrections to the report, appellant's counsel had none.

Appellant's counsel argued two points. First, counsel asked the court to consider appellant's mental state as a mitigating factor. Counsel identified two notes in the probation report relating to this issue, along with referencing the mental evaluation done prior to trial. Counsel noted that appellant may have been suffering from a mental condition when the crimes were committed and confirmed the previous mental evaluation "indicated he likely has some mental health disorders, but did not address whether those disorders could be effectively treated to mitigate the risk [appellant] poses to society." Second, counsel argued that appellant's sentences should run concurrently, as opposed to consecutively. In doing so, counsel confirmed that at least one sentence would carry a term of 25 years to life. Counsel made no motion to strike one of appellant's prior strikes for the purpose of sentencing.

The People argued for the recommended sentence. The prosecutor argued appellant's criminal threats prior (case No. CRF39951) was also a three strike case, making this his fourth strike, and contended appellant was given the benefit of the doubt at that time, only to reoffend. The prosecutor then specifically argued that appellant was properly sentenced under the three strikes law in this instance. Appellant's counsel did not object to the argument that this would be appellant's fourth strike.

The trial court found both counts should be aggravated. In doing so, the court relied on each of the six aggravating factors contained in the probation report. While discussing appellant's prior convictions, the trial court noted it was unaware of the circumstances of appellant's prior "robbery convictions" but stated the "robbery conviction" was in the 1990's.

5

The court also discussed appellant's mental state. The trial court referenced Dr. Cavanaugh's prior evaluation, stating appellant was found "capable of understanding the nature of the charges that he was facing, and he had the ability to cooperate with counsel." It then noted there was no evidence contradicting the finding that appellant was competent to stand trial or showing that appellant suffers from a mental illness constituting a defense to the crimes he committed. The trial court ultimately concluded that if "there was a condition that [appellant] suffered from that he should have been treated for, it was unfortunate that the treatment did not occur before the date of this offense." The court continued, "[w]hile the Court has thought about that, I don't think it mitigates in favor of a lesser recommendation than that submitted by the probation department." Appellant's counsel did not mention the prior finding of incompetence to the trial court, despite the trial and sentencing judge being different from the judge that declared appellant incompetent.

The trial court then imposed appellant's sentence in case No. CRF41410, found appellant had violated his probation in case No. CRF39951, and sentenced appellant for the violation. Before concluding the proceedings, the trial court addressed appellant and his sentence, stating in part: "This is a lengthy sentence, the lengthiest sentence I have imposed since I have been on the bench. It is the only case I feel it is justified."

This appeal timely followed.

**DISCUSSION**

Appellant contends that he received ineffective assistance of counsel at his sentencing for two partially related reasons: (1) counsel's failure to make a *Romero*[3] motion to strike one or more of his prior serious felonies, and (2) counsel's failure to object that appellant's sentence constitutes cruel and unusual punishment under California or federal law.

### *Standard of Review and Applicable Law*

To establish ineffective assistance of counsel, appellant must show that counsel's performance "fell below an objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." (*Strickland v. Washington* (1984) 466 U.S. 668, 688, 694 (*Strickland*).) "A reasonable probability is a probability sufficient to undermine confidence in the outcome." (*Id.* at p. 694.)

"'Tactical errors are generally not deemed reversible; and counsel's decisionmaking must be evaluated in the context of the available facts. [Citation.] To the extent the record on appeal fails to disclose why counsel acted or failed to act in the manner challenged, we will affirm the judgment "unless counsel was asked for an explanation and failed to provide one, or unless there simply could be no satisfactory explanation."'" (*People v. Hart* (1999) 20 Cal.4th 546, 623-624.) "In making the determination whether the specified errors resulted in the required prejudice, a court should presume, absent challenge to the judgment on grounds of evidentiary insufficiency, that the judge or jury acted according to law." (*Strickland*, *supra*, 466 U.S. at p. 694.)

---

[3]     *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 (*Romero*).

## *Counsel was Not Ineffective in Failing to Make a Romero Motion*

Appellant argues that his counsel was ineffective in failing to make a *Romero* motion or otherwise developing a factual record that would support a *Romero* motion. We disagree.

In *Romero*, the California Supreme Court held that trial courts have discretion to dismiss or strike allegations of prior felony convictions. (*Romero*, *supra*, 13 Cal.4th at pp. 529-530.) "[I]n ruling whether to strike or vacate a prior serious and/or violent felony conviction allegation or finding under the Three Strikes law, on its own motion, 'in furtherance of justice' pursuant to ... section 1385[, subdivision ](a), or in reviewing such a ruling, the court in question must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the scheme's spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The analysis whether an offender may be deemed outside the spirit of the law is a stringent one. (*People v. Carmony* (2004) 33 Cal.4th 367, 377 (*Carmony*).) And there is a strong presumption that any sentence that conforms to the three strikes law's sentencing scheme is rational and proper. (*Carmony, supra,* at p. 378.) "Because the circumstances must be 'extraordinary ... by which a career criminal can be deemed to fall outside the spirit of the very scheme within which he squarely falls once he commits a strike as part of a long and continuous criminal record, the continuation of which the law was meant to attack' [citation], the circumstances where no reasonable people could disagree that the criminal falls outside the spirit of the three strikes scheme must be even more extraordinary." (*Ibid.*)

Appellant contends counsel's failure to make a *Romero* motion in this case fell below an objective standard of reasonableness for a competent attorney. In particular,

appellant argues counsel failed to correct inaccurate statements in the probation report, by the prosecutor, and by the trial court that appellant had two prior robbery convictions, failed to detail the allegedly minimal nature of appellant's criminal history, failed to correct statements that appellant's attack was unprovoked and other related sentencing comments, and failed to highlight appellant's mental history. According to appellant, these failures demonstrate appellant's counsel had not investigated and was unprepared to pursue a *Romero* motion.

The People respond that we can reject appellant's argument because appellant's counsel may have simply reviewed the record and determined there was no possibility a *Romero* motion would be granted. But without substantial factual support, this argument merely begs the question. If appellant's counsel had, in fact, completed a full investigation and chosen not to move to strike one or more of appellant's strikes, the People's argument would hold. But it is equally true that appellant's counsel would have been deficient for failing to investigate the relevant underlying facts, thus choosing not to object out of ignorance. (See *In re Brown* (2013) 218 Cal.App.4th 1216, 1223; *People v. Thimmes* (2006) 138 Cal.App.4th 1207, 1212-1213.) On this record, where counsel failed to detail appellant's history of mental illness outside of a vague reference to a competency finding contained in the probation report, failed to correct the "fourth strike" comment from the prosecution or note the error in the probation report, and failed to disclose any mitigating details related to the prior strikes, we cannot confidently state that there is a satisfactory explanation for why counsel did not make a *Romero* motion.

However, even if counsel's performance was deficient, we find appellant fails to satisfy the second *Strickland* prong because there was no prejudice. Although colloquially referred to as a motion, the authority to strike a prior under *Romero* is within the inherent authority of the court and requires no motion to exercise. (*Carmony*, *supra*, 33 Cal.4th at p. 376.) Appellant concedes the court was aware of its authority under the *Romero* doctrine and the record shows that the prosecutor noted the court's authority to

dismiss a prior and expressly argued against its doing so in this case. When discussing appellant's mental history, the trial court confirmed that it had thought about appellant's potential history of mental illness, but expressly rejected that as a basis for reducing appellant's sentence. Then, after imposing sentence, the trial court clearly articulated its satisfaction with the length of the sentence. On this record, our confidence in the judgment is not undermined by the alleged failures of counsel.

We do not find appellant's arguments as to prejudice persuasive. Whether or not appellant had one or two prior convictions for robbery,[4] there is no indication in the record that the trial court relied on this fact in imposing its sentence. While the trial court referred to appellant's "convictions" at one place in the record, it immediately thereafter referred to "the robbery conviction" in noting that the relevant conviction occurred in the 1990's. There is no dispute that only one robbery conviction was alleged in the information and the trial court does not affirmatively rely on the alleged second robbery conviction for any purpose. Similarly, the facts of that conviction appear irrelevant to the trial court's analysis, undercutting appellant's argument that counsel's failure to argue those facts was prejudicial. The trial court acknowledged that it knew little of the robbery conviction but expressly treated it as a minor conviction by noting that appellant's continued criminal history was increasing in violence.

Likewise, the lack of additional information or argument about appellant's mental state does not suggest the trial court would have granted a *Romero* motion. The trial court considered appellant's mental state with respect to the current crimes and did not find that factor persuasive in mitigation. While it is true that the sentencing judge was

---

**4**    It appears from the transcripts in case No. CRF39951 that appellant has suffered only one prior robbery conviction and that the prosecutor knew or should have been aware of this fact from prior research. The specific records to confirm this fact were not before the trial court. The trial court's analysis, however, is sufficient for us to conclude that the judgment would not have changed regardless of the specific number of robbery convictions.

10

not involved in the original determination that appellant was mentally incompetent and was not presented with argument or evidence of that initial finding, there is no reason to believe the court's ruling would have changed with additional information or more forceful argument. As detailed above, the trial court's analysis was predicated on the length and increasing severity of appellant's criminal history, regardless of any mental health issues. In this analysis, the court considered the possibility appellant had a mental disorder and yet ultimately concluded, based on the criminal history evidence before it, that appellant deserved the lengthiest punishment the trial court had yet imposed. Given the overall review of facts undertaken by the trial court, we conclude the lack of additional evidence or argument on appellant's mental state was not prejudicial. (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 993-994 ["Given the court's express consideration of [the] appellant's background and character in ruling on the motion, that portion of its remarks quoted by [the] appellant seems to us to be an acknowledgement that the court could not give undue weight to an inherently speculative argument that [the] defendant's mental state 'made him do it.'"].)

Appellant's remaining argument that the criminal conduct supporting his latest convictions was a border-line offense triggered by the victim's conduct, is simply a reargument of the ultimate balancing made by the trial court when determining that appellant's lengthy and continued criminal history supported the ultimate sentence imposed. The facts support the trial court's conclusion that the sentence was proper. Given that we presume the court acted in accordance with the law (*Strickland*, *supra*, 466 U.S. at p. 694), and may not order a prior conviction struck merely because we might reach a different conclusion than the trial court (*Carmony*, *supra*, 33 Cal.4th at p. 377), we do not conclude the lack of more forceful argument was prejudicial.

Although appellant suffers from some form of mental illness, the trial court could properly find appellant has a long and increasingly violent criminal history warranting a three strikes sentence. This is therefore not one of those even more extraordinary cases

11

that demonstrate appellant is outside of the spirit of the three strikes law. (*People v. Philpot* (2004) 122 Cal.App.4th 893, 907.) As appellant suffered no prejudice, counsel's assistance was not ineffective.

### *Counsel was Not Ineffective in Failing to Object on Constitutional Grounds*

Relying on the failure of counsel to move to strike his prior convictions, appellant also contends that counsel was ineffective for not objecting that his sentence was disproportionate to the offenses for which he was convicted, resulting in cruel and unusual punishment. We disagree. As succinctly explained in *People v. Cluff* (2001) 87 Cal.App.4th 991, 997, appellant is being punished not just for the crime he committed, but for his recidivism. A "punishment imposed under California's Three Strikes law is not so disproportionate that it violates the prohibition against cruel or unusual punishment." (*Ibid.*) No prejudice arose when counsel failed to object to appellant's sentence, properly imposed under the guidelines of the three strikes law, on the grounds that it constituted cruel and unusual punishment.

### DISPOSITION

The judgment is affirmed.