Filed 9/9/21  P. v. Senator CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE, | D077983 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 19CF1176) |
| BRUCE RICHARD SENATOR, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Douglas W. Sortino, Judge.  Affirmed.

John L. Staley, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, and Marvin E. Mizell, Deputy Attorneys General, for Plaintiff and Respondent.

In April 2019, Bruce Senator filed documents in the Fourth District Court of Appeal related to a worker's compensation case.  As a result of threatening statements regarding five judges and their employees and

families contained in one of the documents, the People charged him with five counts of threatening a public official with a prior and one count of threatening a public officer with a prior. After one day of pretrial motions and jury selection, Senator asked to plead no contest to all charges and to admit all priors in open court. Before accepting his plea, the court disclosed that it might grant a *Miranda*[1] motion in Senator's favor and verified that Senator understood his rights. Senator pled no contest. Less than a week later, Senator asked to withdraw his plea, contending he did not voluntarily enter it because he was under duress at the time. After briefing and a hearing on the matter, the court denied the motion to withdraw the plea. At sentencing, Senator asked the court to strike his prior strikes, and the court declined in part. The court sentenced Senator to seven years and four months.

Senator appeals, contending the court erred by denying his motion to withdraw the no contest plea because he was under duress at the time it was entered, and he maintains that the court abused its discretion when it declined to strike all the prior strike convictions under Penal Code[2] section 1385. We find his contentions lack merit, and we affirm.

I

PROCEDURAL AND FACTUAL BACKGROUND

On April 22, 2019, Senator electronically filed a verified Request to File New Litigation by Vexatious Litigant in connection with a worker's

---

[1] *Miranda v. Arizona* (1966) 384 U.S. 436 (*Miranda*).

[2] Further unspecified statutory references are to the Penal Code.

compensation appeal.[3]  The document included statements that threatened violence or torture against several Orange County judges, their families and employees, and other parties involved in the worker's compensation matter.

Specifically, the document named five judges and claimed they had participated in "case-fixing."  Senator wrote that he was "not averse" to the death of the judges or of any of the judicial officers or officers of the court, including attorneys, who were involved.  He told the court that any of the judicial officers he believed had participated in "case-fixing" or knew about case-fixing were "subject to being killed" and that their actions justified subjecting them to murder and torture because death alone was not enough.  He wrote that what would be appropriate would be to "*Break their jaws.  Rip their teeth out.  Reach in with pliers and rip their tongues out piece by piece, cauterizing so they do not bleed to death.  Then ball up their shredded tongues, cut off their cock and balls, and stuff their shredded tongues along with their cock and balls down their throats letting them choke to death.*"

The document also said that the children of the judicial officers were likewise subject to murder as a " 'tool' to keep people in line."  Senator wrote that his past "efforts [had] apparently led to judicial officers losing their lives."

Several of the named individuals believed the threats were credible and feared for their safety.  The preplea report stated Senator had one handgun registered to him in 1995, but it was unknown if he possessed the firearm.

---

[3]     Senator concurrently filed a related habeas petition (*In re Bruce Senator* (D078906)), which we ordered considered with this appeal.  By separate order, we deny the petition.  Some of the facts are taken from the exhibits he attached to his related petition.

After his arrest on April 30, 2019, Senator admitted he had filed the document.

## A. Pretrial and Plea Proceedings

On June 11, 2019, the Orange County District Attorney filed an information charging Senator with five counts of threatening a public official with a prior (§ 76, subd. (a)(2); counts 1, 3-6) and one count of threatening a public officer with a prior (§ 71, subd. (a)(2); count 2). The information alleged a prior conviction under section 76, subdivision (a)(1) with respect to counts 1 and 3 through 6 and a prior conviction under section 71, subdivision (1) as to count 2. It also alleged a prior strike conviction (§§ 667, subds. (d) and (e)(1) and 1170.12, subds. (b) and (c)(1)).

Because the case involved allegations of threats against bench officers in Orange County, the Orange County bench recused itself from the case and transferred the matter to Los Angeles County, though Senator remained in custody in Orange County.

Jury selection began on August 12, 2019. On August 13, 2019, after the trial court informed Senator it was likely to grant a *Miranda* suppression motion at least in part, Senator pled no contest to all the counts and admitted the strike allegations in open court. The court engaged Senator in the standard plea colloquy and told him that because there was no negotiated agreement, Senator would be subject to the maximum sentences allowable by law.

When the parties appeared for sentencing on August 19, 2019, defense counsel informed the trial court that Senator wished to withdraw his plea.

Senator filed a written motion to withdraw, arguing he suffered from physical infirmities and intimidation by Orange County deputies, which made his plea involuntarily given under duress.

B.  Evidentiary Hearing on Senator's Motion to Withdraw the Plea

At the evidentiary hearing, Orange County Public Defender's office investigator Jennifer Surges, defendant Senator, and Orange County jail inmate Luis Groharing each testified.

*Testimony of Jennifer Surges*

Surges met with Senator on July 30, 2019 at the Orange County Central Men's Jail to discuss an envelope defense counsel had in her possession.  The envelope contained a slice of cheese that Senator had given to defense counsel the previous day.  Senator had claimed the slice of cheese had glass in it.  Surges observed a slice of American cheese wrapped in plastic and a speck of something in the cheese.  She could not tell what the speck was, but she could see it was clear and about the size of the tip of a pencil.

The court admitted the cheese slice and felt it to ascertain whether there was a bump in it.  The parties stipulated that photographs of it were acceptable substitutes so the cheese could be returned to defense counsel.

*Testimony of Defendant Bruce Senator*

Senator testified that on June 14, 2019, he had received in his heart healthy lunch bag a slice of cheese that had what appeared to be a piece of glass in it.  He also found shards of glass almost a half inch in size glued to the shell of a hardboiled egg.  He contacted his inmate representative and showed him what he found.  The inmate representative announced to all the inmates to check their cheese and eggs for glass; no one else found any glass.  Senator showed the egg with glass on it to several other inmates so they would know what to look for.  He did not know who put the glass in his bag, and he never discovered glass in any of his food at any other time.  This incident made him fear for his safety.

5

Senator testified that on August 11, the night before trial, around 11:00 p.m. deputies conducted a "mayhem march[ ]," in which they tore up the cells, and the inmates had to clean up the disarray. This was a search of the entire dorm, not just Senator's cell. It left Senator's legal papers in chaos.

He explained that prior to August 12, for hearings in Los Angeles, he would be woken at 5:00 a.m. and would have time for breakfast and to prepare for court before being transported at around 6:50 a.m., but on August 12, they called him for transport around 5:30 a.m. or 5:40 a.m., so he did not have time for breakfast before leaving. While he was waiting for transport, one of the deputies pointed at him and yelled that he was the one who murdered four people over the weekend, referencing an incident in which a man stabbed several people in Garden Grove. Senator feared others would attack him based on the deputy's comment. He did not report the incident to anyone at the jail. He was not retaliated against or attacked by any other inmates after the accusation was made.

Senator also said he was never given a meal on August 12; the first opportunity he had to eat that day was when he got back to the module in Orange County. When the court asked if he received lunch over the noon recess from the Los Angeles County Sherriff's deputies, Senator replied, "Sometimes I did. Sometimes I didn't." The court emphasized that it was speaking about August 12 and asked if he received lunch that day, and Senator responded, "At noon, lunch? Yeah, I got—I got a peanut butter, jelly sandwich."

Senator felt sore at the end of the first day of trial; his back was hurting, and he was physically and mentally exhausted. He said he suffered from a swelling back, and on days when he was transported via an SUV with

6

plastic seats instead of a sedan, it was more difficult to breathe. Being placed in chains made it difficult to breathe, hold himself up, or concentrate.

On August 13, he was woken earlier and given breakfast, but his back was still swollen, and he had pain through his legs because he had not recovered from the previous, long day. He thought about having to go through the process for two weeks, with pain shooting from his thoracic spine to his feet to the point where he could not be sharp and a contributor to his case, so he decided to plead no contest. He wanted to stop the pain in his back.

When the prosecutor asked why he subsequently changed his mind about the plea, Senator said it was because he had time to start to "heal up," and because his housing placement had been interrupted after the plea. He decided not to let the sheriff's department "just destroy [his] ability" to participate in his defense. Senator reported that on August 15, after he entered his plea, the Sheriff's Department removed him from his housing unit and transferred him to another location, where he did not receive medication. After two days, the deputies said Senator was being transferred to Los Angeles County jail and placed him in the transfer module in the morning. But that afternoon they transferred him back to the processing module at the central jail for transfer out of county, and a deputy told him they were going to re-house him. He was returned to his housing module at about 11:00 p.m. that night.

The prosecutor asked Senator if he understood his rights at the time he entered the plea, and Senator said he did. Senator told the prosecutor that he also understood he had the right not to be tortured and he felt he was being put through torture because his back was so sore, and he did not want to put up with it anymore. When the prosecutor asked what could have

7

changed his physical pain for the trial, Senator said that not having to be transported between Orange County and Los Angeles would have improved his situation. He acknowledged someone from medical had cleared him for trial, but he complained that he was not given an examination before that determination was made.

Throughout his testimony, Senator repeatedly gave nonresponsive answers, and the court admonished him.

*Testimony of Luis Groharing*

Fellow inmate Groharing testified that Senator showed him an egg with a shard of glass adhered to the side of the eggshell. He did not recall seeing any glue or adhesive on the shell. He heard there was glass in Senator's cheese, but he did not see it. He had never found glass in his food or heard of anyone else finding glass in their food. He also confirmed there had been a mayhem search during the two weeks when he was housed next to Senator.

*Court Ruling*

Following testimony, defense counsel argued that Senator's free will was overcome by factors outside his control, that he felt hopeless, and he had no other option but to enter the plea. She explained that the glass and the accusation that he was the Garden Grove stabber were evidence of a compounding injury, and that evidence—taken together with him being woken at an earlier time, being transported a distance in tight chains on a plastic bench, having to sit for long hours with a swollen back, and the court's ruling that it did not have jurisdiction to make changes to the Orange County Sheriff's policies or procedures—demonstrated Senator was placed under duress when he entered his plea.

8

The court noted that Senator bore the burden of establishing by clear and convincing evidence that he was operating under a state of ignorance or some other factor that overcame the exercise of free will. It concluded that Senator had failed to substantiate his claims and lacked credibility.

It explained that although Senator claimed a deputy pointed him out as the Garden Grove stabber and that he did not get medical treatment, he offered no evidence to support either claim. Senator also did not file a complaint with the Sheriff at the time.

The court commented that Senator's answers sounded rehearsed, with long narratives that accused sheriff's deputies of misconduct, and it noted that his affect was odd, laughing at inappropriate times. It concluded he lacked credibility. The court offered an example: After testifying that he did not get breakfast one morning and did not eat until he was returned to Orange County that evening, when the court asked him if the deputies in Los Angeles fed him lunch, Senator hesitated as if he were trying to figure out how to answer the question. The court believed Senator had "an agenda, a narrative, and he [was] pushing it regardless of the truth," so it found he lacked credibility.

The court also expressed concern that Senator's position was that because of his medical condition, he was incapable of entering a knowing, voluntary, intelligent plea, and while it was a hassle to travel from Orange County to Los Angeles, that was a fact of the case because of conduct that he had admitted, making threats against Orange County judges. It did not believe that Senator's will was overcome by pain and exhaustion in this case; it found Senator to be manipulative and to lack credibility, and it therefore did not find there was sufficient evidence to support the motion to withdraw the plea.

9

## C. Sentencing

At the sentencing hearing, the prosecution argued Senator had a lifetime of making threats and said that he had been unsuccessful with probation and parole.

The nature and circumstances of the felony were extremely aggravated because the document threatened family members, and Senator wrote that he had been responsible for judges' deaths in the past. Although the court indicated it believed Senator was someone with serious psychological issues who was in part delusional, the threats to bench officers and their family members, including underage children, were aggravating.

The court also noted threats were made against five different judges, one who was presiding over the appeal that prompted the filing and one who had previously prosecuted him, demonstrating Senator harbored grudges and lashed out when he had the opportunity.

Senator had not taken advantage of opportunities to rehabilitate after committing similar offenses in the past; he was unsuccessful with probation and parole, and he repeatedly committed the kinds of offenses for which he was appearing before this court. The court commented that as a practical matter, it believed Senator was a threat out of custody and could not be relied upon to follow through with appropriate mental health treatment.

The court exercised its discretion under *Romero*[4] to strike the strikes as to some of the counts and to allow for concurrent time on the counts that involved judges incidental to Senator's direct dealings. It retained the strikes as to counts 1, 2, and 6. It applied section 654 to count 1. It struck the strikes on counts 3, 4, and 5.

---

[4] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

10

The court sentenced Senator to three years on count 2, doubled to six years for the strike, and to one-third the midterm of two years on count 6, which is eight months doubled to 16 months for the prior strike. It also sentenced him to three years, doubled to six years because of the prior strike, as to count 1, but applied section 654 and stayed that part of the sentence pending completion of the sentence in count 2. For counts 3, 4, and 5, the court struck the prior strikes and imposed two years to run concurrently. The total sentence was seven years and four months.[5]

Senator timely appealed.

## II

## DISCUSSION

### A. Denial of Motion to Withdraw Plea

#### 1. *Burden of Proof and Standard of Review*

A trial court may permit a defendant to withdraw a guilty or no contest plea if the defendant shows good cause by clear and convincing evidence. (§ 1018; *People v. Patterson* (2017) 2 Cal.5th 885, 894; *People v. Breslin* (2012) 205 Cal.App.4th 1409, 1416 (*Breslin*).) To establish good cause, the defendant must show he was "operating under mistake, ignorance, or any other factor overcoming the exercise of his or her free judgment, including inadvertence, fraud, or duress." (*Breslin*, at p. 1416.) Section 1018 should be liberally construed (*Patterson*, at p. 894), but a defendant cannot withdraw a plea because he changed his mind (*People v. Nance* (1991) 1 Cal.App.4th 1453, 1456 (*Nance*)).

"A decision to deny a motion to withdraw a guilty plea ' "rests in the sound discretion of the trial court" ' and is final unless the defendant can

---

[5] The court also opted not to impose fees, and it issued a protective order.

show a clear abuse of that discretion. [Citation.] Moreover, a reviewing court must adopt the trial court's factual findings if substantial evidence supports them. [Citation.]" (*People v. Fairbank* (1997) 16 Cal.4th 1223, 1254 (*Fairbank*); *Breslin, supra*, 205 Cal.App.4th at p. 1416.) "[T]he fact that a hearing court's ruling on a section 1018 motion is reviewed by us under the 'abuse of discretion' standard appropriately results in our paying considerable deference to the hearing court's factual findings: ' "All questions of the weight and sufficiency of the evidence are addressed, in the first instance, to the trier of fact, in this case, the trial judge." ' " (*Nance, supra*, 1 Cal.App.4th at p. 1460, fn. 4.)

  2. *Senator has not met his burden.*

  Senator paints a picture of physical and mental exhaustion at the end of the first day in court clouding his ability to voluntarily enter a no contest plea, but the court did not find Senator to be credible. The court's finding was supported by substantial evidence. (*Fairbank, supra*, 16 Cal.4th at p. 1254.) Specifically, Senator repeatedly gave nonresponsive answers despite the court's admonishments so that he could outline alleged past mistreatment while in Orange County's custody rather than focus on the reasons for his alleged duress at the time of the plea. The court noted that his allegation that a deputy pointed to him and announced he was the Garden Grove stabber was uncorroborated and lacked any supporting evidence, like a grievance form. And although Groharing testified that he saw glass found in Senator's food bag, there was no evidence regarding how the glass got there. Additionally, that incident was not significant enough to him that he requested a plea during any of the court dates that immediately followed it.

Further, Senator's behavior called into question his sincerity and believability: many responses sounded rehearsed; he gave long narratives that were not focused on his alleged distress; and his affect was odd because he laughed at inappropriate times. And some of his responses seemed contradictory or inaccurate. For example, he explained that his housing placement had been disrupted for a few days during which he did not receive proper medication, but despite the disruption in his schedule and the movement, he had time to start to "heal up." Additionally, he told the court he had not received any food on August 12 and was initially evasive when challenged, saying he sometimes got lunch and sometimes did not. When the court pressed him, he admitted he received a peanut butter and jelly sandwich over the lunch recess that day. Thus, there was reason for the court to doubt Senator's claims.

Although the court acknowledged that duress could be caused by pain and exhaustion, Senator did not provide any evidence beyond his testimony to prove his medical condition or how it was exacerbated by traveling between Orange County and Los Angeles using standard procedures, and he admitted someone from medical had cleared him for trial.

Further, the court observed him during the plea and stated that his testimony regarding duress was completely at odds with its observations of him during the plea. Senator understood his rights at the time of his plea. Finally, the court noted that it was difficult to believe, given its colloquy with him before the plea and the defense counsel's lengthy conversation with him, that his reasoning for withdrawal was credible.

Even taking into consideration the evidence supplied by Senator to explain his change of heart, we cannot conclude the court abused its

13

discretion by concluding Senator failed to provide clear and convincing evidence that he suffered from duress at the time he entered his plea.

### B.  Section 1385, Prior Strike Convictions

Senator contends the court abused its discretion by denying his request to strike a prior strike conviction due to remoteness in time and because the court failed to give adequate weight to his mental health problems.  He also contends that the factor in aggravation relating to violent conduct was inapplicable because his crime did not involve actual violence and the conduct for which he was convicted shows a de-escalation from previous threats.

Trial courts have discretion to dismiss "strike" prior convictions in limited cases (*Romero*, *supra*, 13 Cal.4th at p. 530), when the dismissal is "in furtherance of justice" (§ 1385; *People v. Thimmes* (2006) 138 Cal.App.4th 1207, 1213).  A trial court's failure to strike a prior conviction allegation is subject to review for abuse of discretion.  (*People v. Carmony* (2004) 33 Cal.4th 367, 371, 374; *People v. Gillispie* (1997) 60 Cal.App.4th 429, 434-435 (*Gillispie*).)  The court must consider both the defendant's constitutional rights and the interests of society.  (*Romero*, at p. 530.)  "Where the record demonstrates that the trial court balanced the relevant facts and reached an impartial decision in conformity with the spirit of the law, [the reviewing court] shall affirm the trial court's ruling, even if [it] might have ruled differently in the first instance." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310.)  A court abuses its discretion when it exceeds the bounds of reason. (*People v. Williams* (1998) 17 Cal.4th 148, 162.)

Here, the court considered the arguments Senator raises on appeal.  It properly considered the nature and circumstances of the present offenses, the nature of the convictions, and the particulars of Senator's background and character.  It addressed the interests of society, noting that the threats were

made against five different judges, including one presiding over his appeal, and their families. It found the threats to be aggravated because of who was threatened and also because he claimed responsibility for the previous death of a judge. The court believed Senator was a threat to society and could not be relied upon to follow through with mental health treatment.

The length of time between the previous convictions in 1997 and 2007 and the present one did not weigh in Senator's favor here because the court concluded that Senator harbored grudges for long periods and lashed out when he had the opportunity. And while Senator contends the court did not give proper weight to his mental health issues, he does not explain how this abused the court's discretion. The court explained that it could not take into account any formal psychiatric diagnosis because the only information before it was at least 22 years old. Although the court recognized that Senator suffered from some kind of mental issues, it also commented that Senator had failed to take advantage of opportunities to rehabilitate after committing similar offenses in the past, and he had been unsuccessful on probation and parole.

The fact that Senator's crime did not involve actual violence did not restrict the court's application of California Rules of Court, rule 4.421 as an aggravating factor here. The court reasonably concluded that Senator's present offense was not a de-escalation because Senator's statements claimed responsibility for previously causing the death of judicial officers. This at least implied his actions could likewise directly lead to death in the present case.

Despite its concerns and its finding that there were significant factors in aggravation, the court exercised its discretion to grant the motion as to counts 3, 4, and 5. The trial court is not required to offer its reasons for

declining to exercise discretion under section 1385 (*Gillispie, supra*, 60 Cal.App.4th at p. 433), but the explanation the court offered on the record here demonstrates the court's reasonableness in declining to strike the prior. (See *id.* at p. 434 [" '[A]ll that is required on the appellate record is a showing that the court was aware of its discretion to select an alternative disposition' "].)

DISPOSITION

The judgment is affirmed.


HUFFMAN, J.

WE CONCUR:


McCONNELL, P. J.


DO, J.